# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE CONSOLIDATED COAL COMPANY OF ST. LOUIS

*v.*

FRANK BOKAMP.

*Opinion filed June 21, 1899—Rehearing denied October 6, 1899.*

1. PLEADING—*when objection to declaration is waived by pleading over.* An objection that the declaration of a servant injured by reason of the defective condition of the place where he was working, failed to allege that he relied upon the master's promise to repair and that a reasonable time had elapsed after such promise, is cured, after verdict, by pleading over.

2. NEGLIGENCE—*when question of contributory negligence is for jury.* The question whether the acts of the plaintiff contributed to his injury, so as to bar recovery, is for the determination of the jury, where the minds of fair men would differ in their conclusions.

3. INSTRUCTIONS—*when omission from instruction of element of recovery is not ground for reversal.* That an instruction for plaintiff, in a suit to recover for an injury received while working after a promise to repair defects, fails, in summing up the essentials of recovery, to negative the idea that the danger was so imminent that ordinarily prudent men would not incur it, is not ground for reversal, where the other instructions fully define due care and require the plaintiff to be in the exercise thereof.

4. SAME—*when instruction on contributory negligence is properly re-fused.* An instruction that plaintiff could not recover if he "did any careless or negligent act which materially contributed to his injury," is properly refused, as he might, under such circumstances, be entitled to recover if his acts or omissions were not the proxi-mate cause of the injury.

5. MINES—*statute concerning props has not superseded common law ob-ligations of master to servant.* The statute requiring mine owners to keep a supply of props and timbers on hand, "so that the workmen may at all times be able to properly secure said workings for their own safety," does not supersede the common law obligation of the mine owner with respect to the roof of the mine, so as to relieve him from further responsibility after complying with the statute.

*Consolidated Coal Co. v. Bokamp,* 75 Ill. App. 605, affirmed.

APPEAL from the Appellate Court for the Third Dis-trict;—heard in that court on appeal from the Circuit Court of Macoupin county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

CHARLES W. THOMAS, and FRANK W. BURTON, for ap-pellant.

PEEBLES, KEEFE & PEEBLES, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The statement of facts by the Appellate Court is as follows:

"This suit was commenced by appellee to recover for injuries sustained by him while working as a driver in appellant's coal mine. The mine is located at Gillespie, in Macoupin county. At the time of the injury complained of it had a main entry running north from the bottom of the shaft, from the east wall of which various side entries had been driven. The side entries ran east, at right angles with the main entry. The injury took place at the ninth east entry. Appellee had been in the employ of appel-lant as a driver in this mine for about three years. It was his duty to drive a mule hauling empty cars from the

shaft bottom to the working places, and, when loaded, back to the shaft bottom. The ninth east entry was about eight feet wide and six feet high. It extended about a quarter of a mile from the main entry. The coal was being mined from rooms adjoining it by a machine with a capacity of forty-eight boxes a day. Near the east end of the east entry was what was called a 'back entry,' running in a north-easterly direction from the ninth east entry. At this point there was a switch. In doing his work it was the practice of appellee to couple onto four empty boxes on a switch in the main entry, haul them out that entry to the ninth east, thence out the ninth east to the back entry, there leave two of them on the west side of the switch while he went on down the entry to the place where the coal was being mined and loaded, exchange the two empties taken with him for two loaded boxes, haul the two loaded ones up to the east side of the switch, stop them, then take his other two empties into the back entry, exchange them for two loaded boxes and bring them out the back entry to the switch. As the mule pulling the cars approached the turn at the switch, appellee would step from his seat on the front box, go across to the ninth east track and start the two loaded boxes which he had left standing there. There was a down grade from that point west. After starting the two loads he would follow after the mule, moving slowly with the other two, and the two started would follow him. Some twenty feet from the point where he would start the cars was a wide place in the entry on the north side of the track. At this point he would pass around to the right of the cars in front of him and mount the seat which he had left when he went to start the other cars. He would then drive down the grade and up the one that was further on. After reaching the top of the second grade he would detach from the two first and return for the two cars started, which he would haul up to the others, couple on and proceed with the four toward the shaft.

Some three or four days before he was hurt he noticed that two cross-beams supporting a portion of the roof of the ninth east, a short distance west of the switch and at the wide place mentioned, were cracked, and sagged down in the middle. On the Saturday before he was injured on Tuesday, he claims that he notified his pit-boss, C. J. Ramsey, of the dangerous condition of the roof at that place, and that Ramsey promised to have it repaired. On the day that he was injured he had made several trips, finding the ground underneath the sagging cross-beams clear and all right. On the trip when he met his accident he had taken his last two empties into the back entry and returned with two loads. He had started the two loads which had been left to the east side of the switch and had walked to the wide place. While trying to mount his seat on the front car, as was his wont, his right foot was caught on some slack and top coal, as he contends, which had been precipitated from the defective roof above since the time he passed with the empties, and he was thrown forward and jerked off by the timber which supported one end of the broken cross-beams. He was hurled in front of the first car, which so crushed and mangled him as to paralyze both lower limbs and render the amputation of one of them necessary."

A trial resulted in a verdict in favor of the appellee for $5150, which, on appeal, was affirmed by the Appellate Court for the Third District.

The declaration consisted of five counts, only two of which the court permitted to go to the jury. In one count the negligence charged is, that the appellant allowed certain props, cross-beams and supports which held the roof of the mine, to become cracked, broken and unsafe, and so to remain after promising to repair the same, whereby they gave way and precipitated large quantities of coal and slack from the roof, which collided with the cars and caused the injury. In the other the negligence charged is the failure of appellant to furnish ap-

pellee a reasonably safe place to work in, in allowing the track and place where he was wont to work and haul cars to be obstructed with coal and slack, props and other material, so near the track as to injure him in the use of it, and in allowing the supports for the roof to become broken, whereby coal and slack were precipitated from the roof, causing the injury.

Appellee contends that he was directed by the mine manager to haul the cars in the manner he did, and that in order to haul forty-eight cars a day, as was required of him, it was necessary for him to perform his duty in that manner. The testimony of appellant tends strongly to show that the appellee was not injured at the place alleged to have been defective, but at a point fifty feet distant; that the defective timbers complained of were not supports for the roof, but only to hook strings on; that no complaint or notice had been made or given of any defect by either appellee or Dickerson, the night mine inspector, and that no report was made of any defect, as shown by the book in which it was the duty of the inspector to make his report. Concerning the above points of controversy there was a sharp conflict.

Appellant made its motion to take the case from the jury at the close of appellee's evidence, which motion was afterwards renewed at the close of all the evidence, and it contended that the testimony showed that at the time of the injury the appellee was not in the exercise of due care and caution for his own safety, and that the court should so find that fact as a matter of law. Three witnesses, men working in the mine shortly before appellee was injured, named Brown, Casky and Opie, testified that they warned the appellee that he was running a risk in handling the cars in the way he did. There is no testimony showing the speed at which these cars were going when appellee attempted to mount his seat on the front car, nor does the evidence indicate that the speed was such as made it a matter of imminent hazard so to do.

After verdict appellant filed its motion in arrest of judgment, for the reason set forth that neither of the counts which the court allowed to go to the jury was sufficient to support the same. The errors assigned in the Appellate Court were in denying the motion for arrest and in entering judgment on the verdict. The errors here assigned are, the Appellate Court erred in permitting judgment and in not reversing and remanding the cause. The points relied upon by appellant we shall consider here in the order named in its brief.

It is contended that the declaration was defective; that it is not supported by the testimony; that there is no direct averment of the promise by the appellant, through its manager, to repair the alleged defect, or notice of it; that there is no allegation that a reasonable time had elapsed after the promise to repair the supposed defect, and no averment that appellee relied upon the promise and thereby subjected himself to the danger. The allegations in the first count of plaintiff's declaration which was allowed to go to the jury are, after setting forth the nature of his employment in the mine, that the defendant permitted certain supports which held up the roof along the track and prevented clods, coal and other material from falling upon and obstructing the same, to become cracked, broken and unsafe, and to so remain after promise of the defendant to the plaintiff to fix and make safe said props, whereby the said props, cross-beams and supports broke down under the pressure of said roof and obstructed the said track, so that said cars and boxes so hauled and conducted along said track by the plaintiff, he being in the exercise of due care and caution for his own safety, collided with and struck said obstruction, throwing the plaintiff across the track, whereby the injury resulted. It will be seen that from this declaration the appellant had notice of the points relied on, viz., notice of the defect and that such defect caused the injury, and that the plaintiff was in the exercise of due care and

caution for his own safety. This, so far as stating a cause of action, is sufficient, and while on special demurrer the declaration might have been objectionable, on the grounds that it failed to allege that the appellee relied upon the promise to repair, and that a reasonable time had elapsed after the promise to repair the supposed defect, the objection after verdict is cured. *Chicago, Burlington and Quincy Railroad Co.* v. *Warner,* 108 Ill. 538; *Chicago, Burlington and Quincy Railroad Co.* v. *Harwood,* 90 id. 425; *Chicago and Alton Railroad Co.* v. *Clausen,* 173 id. 100.

Appellant contends that the evidence in this case fails to show that the plaintiff was in the exercise of due care and caution; that it appears that other witnesses warned him that the manner in which he hauled the coal was dangerous; that his getting on the front moving car, with the other cars following behind him detached from the two he was driving, was negligence, and that we should pronounce it such as a matter of law. We have held that it is not negligence *per se* to alight from or board a moving street car propelled by horse or electric power, (*Cicero and Proviso Street Railway Co.* v. *Meixner,* 160 Ill. 320,) and we cannot say that the trial court would have been justified in holding that the acts of the plaintiff contributed to this injury so as to bar a recovery, it being a question upon which the minds of fair men would differ. It was a question of fact for the jury.

It is contended that because the declaration fails to state that reasonable time had elapsed after notice to the defendant in which to repair and that appellee relied upon the promise to repair, the court erred in giving the first instruction to the jury. This instruction embodied all the elements necessary to be proved in the case in order to entitle appellee to recover, viz., its failure to repair within a reasonable time; that the promise to repair by the appellant was relied on by the appellee; that such defect was the cause of the injury, and that the appellee was at the time in the exercise of reasonable care for his own safety.

The objection to the declaration was waived by pleading over, and the instruction correctly stated the law.

It is also contended by appellant that the instruction is objectionable in this: that the failure to repair referred to was after a reasonable time had elapsed after it had notice of the defect, whereas it should have been a rea-sonable time after the promise of appellant to repair. Be this as it may, we fail to see how in any way appel-lant could have been injured or the jury misled by the instruction. The notice, if given, and the promise to repair, were contemporaneous, and these questions are settled by the trial and Appellate Courts.

It is insisted the instruction was also erroneous in withdrawing from the jury the question of the nature of the defect, and thereby absolving the jury from any consideration of the question whether the plaintiff was negligent in continuing at such dangerous work, and in failing to tell the jury that if the danger was apparent and imminent he would not have been justified in con-tinuing at his employment notwithstanding the promise of appellant. It is true the law is that a promise to re-pair does not authorize a person to encounter a great and imminent peril, and the jury were told that before the plaintiff could recover he must have been in the exercise of due care and caution on his part for his own safety. This was reiterated in the instructions given for the de-fendant. Due care and caution was defined in defendant's fourth instruction, and defendant's fifth instruction told the jury that the care which "the law requires of any per-son for his own safety increases with the known dangers to which the person is exposed, and if the jury believe, from the evidence, that the primary cause of the plain-tiff's injury was the danger or hazard of which he had notice, then the law will require of the plaintiff the exer-cise of that degree of care for his own safety commensu-rate with the danger or hazard to which he was exposed." There was no inconsistency between this instruction and

the other instructions offered, and the jury were told by the series that the plaintiff must have been exercising such care and caution for his own safety as a reasonably prudent man under like circumstances would have exercised, and that he could not assume the hazard of an imminent danger without absolving the defendant from liability for any resulting injury.

Complaint is made that the court erred in refusing to give instruction 21 offered by appellant, to the effect that "if the jury believe, from the evidence, that plaintiff did any careless or negligent act which materially contributed to his injury he cannot recover in this case." The substance of this instruction was embodied in instructions theretofore given. It cannot be held that every negligent act of which the plaintiff might have been guilty would bar a cause of action in his behalf. The negligence of defendant charged in the declaration was in failing to keep the roof, after notice, in such condition that coal and other substance should not fall, so as to render the work of the plaintiff dangerous. Any negligence of the plaintiff in attempting to carry more cars than might possibly be safe could not in any manner have been a part of or connected with the falling of the roof in consequence of a failure on the part of the defendant to sufficiently secure it and prevent its falling. No negligence of the plaintiff is claimed on the part of the appellant to have existed other than that he sought to carry more cars than was necessary or than was safe, or that he continued to work in the mine after notice of the danger that might exist from the roof, consequent on the timbers being pressed down at the point mentioned in the evidence. We have already disposed of the question as to whether there was negligence on the part of the plaintiff in continuing to work after he had given notice to the mine manager. It would be a reflection on the intelligence of the court to ask it to consider that the manner of hauling cars in an entry in a coal mine was contribu-

tory to a danger from the falling of a roof. The only possible connection between negligence on the part of the plaintiff, aside from these questions, that could exist, arises from the inquiry as to whether the plaintiff, in carrying a number of cars in the manner he had theretofore been doing over the track in the mine entries, was negligent. The defendant in the trial court contended that plaintiff was negligent in hauling the number of cars he did on his trips, in his manner of starting other cars theretofore hauled to the shaft, and in seeking to mount his car propelled by the mule which drew the same and over which the plaintiff had control, and that the evidence is seriously conflicting as to the time at which the falling of the roof occurred on which the plaintiff stumbled.

Instruction No. 21 offered by appellant was to the effect that "if the jury believe, from the evidence, that plaintiff did any careless or negligent act which materially contributed to his injury he cannot recover in this case." The substance of it is contained in the instruction above mentioned and others. It might be that plaintiff failed to do some act or was guilty of some careless or negligent act which contributed to his injury, yet which was not the proximate cause of the injury, and still be entitled to recover.

By the twentieth instruction asked by appellant and refused, the jury were told that if plaintiff ran in front of the coal cars while they were going down grade of their own weight, and attempted to board the front car while in motion and coming toward him, and was consequently injured, he cannot recover. The court did not err in refusing this instruction, as it is the law in this State that it is not negligence *per se* to attempt to board a slowly moving train. As before stated, there is nowhere in the record any evidence of the speed at which this car was going, and the testimony further shows that this had been the way in which the plaintiff and other drivers were wont to act. The mere opinions of the three wit-

nesses, even if their testimony referred to the danger to plaintiff himself instead of to others using the tracks, that it was dangerous, would not make it such in law.

Appellant's twenty-second and twenty-third instructions asked and refused told the jury there is no law in this State which makes it the duty of any person or corporation operating a coal mine to prop or secure the roof so that it will not fall upon those engaged in working therein; that the defendant was not charged with any duty imposed upon it by law to prop or secure the roof in the mine so that it would not fall upon the plaintiff, nor to repair or replace any props that became broken or rotten or out of repair; that this duty is imposed by law upon the workmen who work therein. The position contended for by counsel for defendant in those two instructions has been before this court in a number of cases, notably in *Consolidated Coal Co.* v. *Scheiber*, 167 Ill. 539, *Same* v. *Same*, 65 Ill. App. 304, and *Consolidated Coal Co.* v. *Wombacher*, 134 Ill. 57, and is based upon *Consolidated Coal Co.* v. *Yung*, 24 Ill. App. 255, and *Consolidated Coal Co.* v. *Scheller*, 42 id. 619. In the *Scheiber case, supra,* we used this language (p. 545): "Whether, therefore, it was the duty of appellant or not to prop the roof, still, if it assumed that duty and undertook to discharge it, and did so in such a careless manner that the roof was thereby loosened and rendered more liable to fall, and the plaintiff was in the exercise of due care for his own safety, as alleged and as necessarily found by the jury, the appellant would be liable. Having undertaken to perform the work it became its duty to perform it in a proper manner, whether bound in the first place to perform it at all or not. We do not, however, wish to be understood as holding with the contention of counsel that the statute has formulated a complete code of rules by which all liability of the operator or owner of the mine is to be governed, and that there is no longer any common law duty resting upon such owner or operator for a violation of which an action will lie."

Counsel for appellant contend that the statute has formulated a complete code of rules of mine management, and that the common law rules of negligence are thereby superseded, and that especially is this true so far as the care of the roof is concerned; that the statute, which requires that the owner, agent or operator of every coal mine shall keep "a supply of timber constantly on hand of sufficient length and dimensions to be used as props and cap-pieces, and shall deliver the same as required, with the miners' empty car, so that the workmen may at all times be able to properly secure said workings for their own safety," supersedes any other obligation on the part of the mine owner to look after the roof and to provide a reasonably safe place for the workmen. We are referred to the following cases in support of this contention: *Commonwealth* v. *Cooley*, 10 Pick. 37; *Commonwealth* v. *Marshall*, 11 id. 350; *Towell* v. *Merritt*, 3 Greenl. (Mo.) 22.

It is a well settled rule of law, and one that this court has announced, that the master owes a duty to the servant to exercise reasonable or ordinary care to provide a safe place for the servant, or a place reasonably safe and fit for the use intended, and to exercise a like degree of care in the furnishing of tools and appliances and in the selection of co-laborers. (*Chicago and Alton Railroad Co.* v. *Platt*, 89 Ill. 141; *Toledo, Peoria and Warsaw Railway Co.* v. *Conroy*, 68 id. 560.) The degree of care required on the part of the master varies with the nature of employment and the means of knowledge of the servant. This does not mean that the master is an insurer nor does it relieve the servant from due care. If the servant has no knowledge of risks of which the master has knowledge, it is his duty to warn him. If the converse is true, the servant should notify the master, or, if the peril is imminent, cease work. The requirement of the statute above referred to seeks to protect the miners by compelling the mine owner to provide material "so that the workmen may at all times be able to properly secure said

workings for their own safety." If the workmen, only, used this timber, propped the roof themselves and themselves undertook to secure the same against injury, it might well be said they assumed the risk. But here appellee had nothing to do with the roof. He found it out of repair, and the appellant had notice, through its vice-principal, Ramsey, and assumed to repair it. The evidence further shows that the company had timber-men in its employ whose duty it was to protect the roof. Appellee's duties gave him no time, nor does it appear that he had the means or ability, to make the needed repairs. It were to test the flexibility of the law too far to stretch this statutory enactment as a shield over appellant now. In the case of *Consolidated Coal Co.* v. *Scheller*, 42 Ill. App. 619, to the well-considered opinion of which our attention has been earnestly called, the elements here found of notice, either actual or constructive, and the promise to repair, were wholly lacking.

Complaint is made in appellant's brief of the modification of the sixteenth instruction asked. The instruction asked was as follows:

"The court instructs the jury that the plaintiff, in entering the employment of the defendant, assumed all the ordinary and usual risks and hazards of service, and if the jury believe, from the evidence, that the primary cause of the plaintiff's injury *was the fall of the coal from the roof of the mine, and that the danger of such fall* was one of the ordinary and usual risks and hazards of such service, then the jury should find the defendant not guilty."

The modification consisted in omitting the words in italics. There was no error in this.

Since the submission of this case the plaintiff has died, and the judgment in this case will be entered *nunc pro tunc* as of the date at which it was submitted.

Finding no substantial error in the record the judgment will be affirmed.            *Judgment affirmed.*