## Gertrude Streeb, Appellee, v. St. Louis & O'Fallon Coal Company, Appellant.

1. MINES AND MINERS—*what essential to recover for wilful violation.* Before a recovery can be had for a wilful violation of the Mines and Miners Act it must be established that the injury or death was caused by such wilful violation, that is to say, that such wilful violation was the proximate cause of such injury or death.

2. MINES AND MINERS—*for what wilful violation owner not liable.* The firing of shots is a duty strictly cast upon the miners themselves. If there is a wilful violation of the duties prescribed by statute in firing shots the owner is not responsible.

3. MINES AND MINERS—*when owner liable for wilful violation by employe.* Where the statute prescribed a specific duty upon any employe in the mine, when in the performance of that duty the employe is to be regarded as the representative of the mine owner, and performing a duty or work that may be properly said to belong to the owner as master, as distinguished from the work of the miner or other employe as a servant, who is not representing the mine owner in any duty the law casts upon him as master, such statutory duty is the owner's duty also; and for any wilful violation of the statute by such representative, a statutory action is given to an employe injured by reason thereof because such violation is the violation of the mine owner.

Action in case for death caused by alleged wrongful act. Appeal from the City Court of East St. Louis; the Hon. W. M. VANDEVENTER, Judge, presiding. Heard in this court at the March term, 1911. Reversed. Opinion filed November 11, 1911.

**Statement by the Court.** Gertrude Streeb, as widow, brought this suit against the appellant company for the death of her husband, John J. Streeb, by reason of appellant's alleged wilful violation of the statute on Mines and Miners. The judgment was against appellant for $5,000 and it appealed to this court.

The first count of the declaration charged the wilful violation of par. (e) of sec. 20 of said Act, by the appellant, through its shot firers, in that it wilfully ignited, otherwise than by electricity, two shots at the same time, in room 30 off main north entry in its mine, and that less than one minute in time elapsed between said shots. The second count charges that one of said shots was a "dependent shot" and that the appellant, through its shot firers, wilfully ignited said dependent shot before the expiration of ten minutes from the firing of the other shot, in violation of said par. (e). The third count is for wilful violation of par. (d) of said sec. 20, charging that appellant through certain servants, wilfully ignited said shots and wilfully failed to take measures to prevent any one approaching said shots by shouting "fire," immediately before lighting the same.

At the time he was killed, appellee's intestate was employed as a helper to a machine-runner in appellant's mine. The coal was under-cut by a machine, and the duties of the deceased consisted in shoveling back the dirt and coal removed by the machine. The machine-runner, with whom the deceased was working, finished under-cutting the coal in room 30 about two o'clock in the afternoon, and removed his machine along the entry to room 35 where they worked until near four o'clock. After the machine-runner and the deceased had finished their work in room 30, the loaders then came in and prepared the shots for firing. One shot was placed near each rib and two others

near the center and top. The center holes were driven toward each other in the form of the letter V. The first to be fired of the latter two shots was called the "buster" or "dependent" shot, which was to open the face of the coal. They began firing the shots in the mine about ten minutes before four o'clock. The fuses of the two shots in the face had not been so prepared that at least a minute as charged in the first count, and ten minutes as charged in the second count, would elapse between firing the dependent shot and the other shot. The miners who fired these shots made no outcry of any kind and took no precaution to prevent persons from entering the room while they were being fired. When the firing of shots began in the mine by the miners that evening, the machine-runner and the deceased quit work in room 35, and passed down the entry about four hundred feet near to the mouth of room 30, and the deceased remarked that he would go into room 30 and get his tobacco he had left there. He then went into the room and very shortly afterwards the dependent or first shot exploded. Immediately he was heard to moan or shout pretty loud and to continue to moan, but in weaker tones. As the machine-runner and others hastily approached the mouth of the room, the second shot exploded and the moaning continued, but in still weaker tones. They found the deceased's cap, lamp and bucket on the easterly side of the room about fifteen feet from the face, and he was found lying on the coal near the westerly side of the room, about twelve feet from the face. He was taken out of the mine and died in the ambulance on the way to the hospital. He had left his tobacco in the room when they finished work in the room, about ten or twelve feet from the face near where his body was found. Under the methods of mining coal in appellant's mine the miners fired the shots. They first drilled the holes, and then after the coal was under-cut they prepared the shots, and near

four o'clock fired them themselves. The machine-runner and helper had nothing to do with preparing or firing the shots. On the evening in question the two miners in room 30 left before firing time to see about help for a car that was off the track in the entry near their room, and by their request the miners in room 29 fired the shots that killed Streeb. The shots were loaded with powder and rope fuse and fired in the ordinary way, and they were lighted near the same time, and there was a half minute or less time between the two explosions.

BARTEL, FARMER & KLINGEL, for appellant; M. U. HAYDEN, of counsel.

WEBB & WEBB and D. J. SULLIVAN, for appellee.

PER CURIAM. Appellant contends here that no cause of action was stated in the declaration and that no cause of action was proved under the declaration. Our attention will be directed particularly to the second part of its contention. All the counts of the declaration charge wilful violations of paragraphs *d* and *e* of said section 20 of the Mines and Miners Act,—wilful violations thereof by the appellant. In order to recover, the appellee must prove at least one count thereof. As to the first and second counts of the declaration, we think it is clear that there can be no recovery in this case, because it is not proved that the wilful violation of appellant, if any, caused the death of appellee's intestate. Before appellee can recover as the widow of the deceased, she must prove that the death of her husband was caused by the wilful violation of the statute. If he died from other cause she cannot recover. In order to prove that the wilful violations charged in the first and second counts of the declaration were the proximate cause of her husband's death, she must necessarily prove that the exploding of the second shot caused his death. If the

explosion of the first shot killed the deceased, then the fact that the two shots were ignited at or about the same time could not be said to be the proximate cause of his death. Neither in such case would the fact that less than a minute, or less than ten minutes, elapsed between the two explosions, be the proximate cause of his death. The proof shows that he was seriously injured, if not killed, by the first shot, from the fact that he moaned and continued to moan from the effects of the first shot until after the second shot; and that he never got away from the place where he evidently had fallen, although he had about a half minute in which to do so before the second shot. The evidence shows that he continued to moan after the second shot, and that the moaning continued to grow weaker from the time he was first heard. Hence, whether or not the second shot killed him, is the merest speculation. Neither can it be said from the evidence, that the second shot contributed to cause his death, that is, that he would not have died if the second shot had not exploded.

The proximate cause of the death of Streeb is sufficiently proved to be the failure of the two miners who fired the shots in question, to give warning as required by said section before firing the shots. These miners were employed by appellant in its mine, and it is proved that they wilfully violated the statute as charged in all the counts of the declaration. We are of the opinion, however, that the appellant has not violated any of the provisions of the statute set forth in the declaration. In plain words what we mean to hold is that appellant is not responsible, under the statute, for the wilful failure of these miners to obey the provisions of the statute, although they were employed by it. The appellant's mine was not working under the provisions of the Act requiring owners to furnish shot firers. The firing of the shots in question was strictly the duty of the miners themselves, and it

is not made the duty of appellant by the statute to fire the blasting shots or to give the warnings against them. The language of paragraph *d* of said section reads thus:

"A miner, workman or shot firer who is about to explode a shot with a manufactured squib shall not shorten the match thereof, or saturate it with mineral oil or ignite it except at the end; and he shall see that all persons are out of danger from the probable effects of such shots, and whether using squibs or fuse shall take measures to prevent any one approaching by shouting 'fire' immediately before lighting the same."

The duties thus prescribed by the statute are clearly and unequivocally put upon the miner, workman or shot firer who is about to explode such shots. An examination of paragraph *e* will make it also equally clear that the duties therein mentioned are also placed upon the miner, workman or shot firer. None of the statutory provisions aforesaid are placed upon the mine owner by the terms of the statute, and they are not that character of duties that belong to the mine owner as a master, as distinguished from that class of duties that belong to the miner as a servant. The miner in firing the shots therefore is doing the work of a servant, and is not representing the mine owner as master in performing the master's duty that the law casts upon him as a master. The statute does not intend to give a statutory action to the miner or those working around him, for any wilful violation of a statutory duty that is enjoined upon the miner only. Wherever the statute prescribes a specific duty upon any employe in the mine, when in the performance of that duty the employe is to be regarded as the representative of the mine owner, and performing a duty or work that may be properly said to belong to the owner as master, as distinguished from the work of the miner or other employe as a servant, who is not representing the mine owner in any duty the law casts upon him as master, such statutory duty is the

owner's duty also; and for any wilful violation of the statute by such representative, a statutory action is given to an employe injured by reason thereof, because such violation is the violation of the mine owner. The statutory duties of hoisting engineers, mine examiners and mine managers, are instances of such duties as are also clearly the duties of the mine owner. Appellant is not liable under the statute in this case for the simple reason that it has violated no statute complained of in the declaration. The heavy penalty by fine and jail sentence that is imposed by section 33 of the Mining Act, can only be imposed upon those persons who wilfully violate the provisions of the statute. Neither is the right of action given to employes that are injured by wilful violations of the statute, given against any one who has not wilfully violated the statute. We have few decisions in this state, if any, bearing directly upon the specific question here involved. The nearest, perhaps, is the case of Consolidated Coal Co. v. Yung, 24 Ill. App. 255. The question in that case was in regard to section 16 of said statute that makes it the duty of the operator or owner to furnish props and caps of suitable lengths and dimensions to the miners, and makes it the duty of the miner to prop his roof therewith. The court, speaking through Judge Wilkin, held in that case that there was no duty on the owner to prop the roof, and that under the statute no action could be maintained against the owner for the failure of the miner to prop the roof. However, if the mine owner undertakes the work of propping the roof and is negligent in so doing, a right of action at common law may, in a proper case, be had against him. Consolidated C. Co. v. BoKamp, 181 Ill. 9. It is certain, however, that no action under the statute could be maintained against the owner for a failure to prop the roof. So it is equally clear to us that in this case there can be no statutory action against appellant.

It is urged, however, that paragraph *d* of section 16

of the Mining Act, makes the appellant responsible for the act of the miners who fired the shots in question. That provision reads thus: "He (mine manager) shall give special attention to and instructions concerning the proper storage and handling of explosives in the mine, and concerning the time and manner of placing and discharging the blasting shots. And it shall be unlawful for any miner to fire shots except according to the rules of the mine." This section does not conflict with our position in this case. There is no charge in the declaration that appellant violated the said provision in said section 16, by failing to give proper instructions or to make proper rules and regulations in regard to firing blasting shots, and said section does not make it the duty of the owner to give warning against shots fired by the miner, and does not make the owner responsible for the failure of the miner to give the statutory warning.

For the reasons above given, we think the court erred in refusing to direct a verdict of not guilty, at the close of the evidence. The judgment of the lower court is therefore reversed.

*Reversed.*

Statement of ultimate facts: We find there is no evidence tending to prove the violation of the Act in regard to Mines and Miners charged in the declaration.