JAMES E. TESTA, Plaintiff-Appellant, *v.* KALUZNY BROTHERS, INC., Defendant-Appellee.

(No. 59650; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

First District (4th Division)—October 23, 1974.

*Rehearing denied December 2, 1974.*

Robert J. Rafferty and Constantine N. Kangles, both of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban, Bech, Hoban & Fuller, of Chicago (Leonel I. Hatch, Jr., and D. Kendall Griffith, of counsel), for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The plaintiff, James E. Testa, a welder, who was employed by Anzelc Welding Company in Joliet, Illinois, was injured while assisting in the installation of an overhead type door in the plant owned by defendant, Kaluzny Brothers, Incorporated. A three-count complaint was filed on April 15, 1969. In count I, a violation of the Illinois Structural Work Act (Ill. Rev. Stat. 1967, ch. 48, pars. 60—69) was alleged in that defendant was in charge of the work being done at its plant and that plaintiff was injured as a result of the collapse of a forklift truck, operated and controlled by defendant, which was being used in the installation of the overhead door. In count II it was alleged that the injuries to plaintiff were due to the negligent operation and/or maintenance of the forklift by defendant. In count III it was alleged that the forklift was under the sole control of defendant and that while plaintiff was elevated on the forklift it collapsed causing injuries to plaintiff. An answer was filed by defendant. A third-party complaint was also filed by defendant against Charles Anzelc Welding Company, plaintiff's employer, which by order of the court was dismissed with prejudice on September 14, 1972. Interrogatories were submitted and answered and the cause proceeded to trial before a jury on counts I and III. A general verdict in favor of the defendant was returned by the jury. Judgment was entered for defendant and plaintiff appeals.

The record shows that on the morning of September 23, 1968, plaintiff, a welder, 20 years of age, first reported for work at Anzelc Welding Company and was assigned to go with his foreman, Charles Keltz, to install an overhead type door in the east wall of defendant's plant. They arrived shortly thereafter at defendant's plant in a company truck. The door opening where the overhead door was to be installed was approximately 16 feet wide and 14 feet high. The preliminary work involved removing the old door. Then, in order to put up the new door, an angle iron frame which functioned to hold the roller bar for the new door had to be installed. After this was done the roller bar was to be put in place at the top of the door opening. The roller bar was made of steel, approximately 17 feet long and 6 inches in diameter, with a spring inside. Estimates of its weight varied from 400 to 700 pounds. There was no way that the roller bar could have been hoisted to the top of the door opening without some equipment to lift it.

The defendant owned a forklift truck. Keltz asked Edward Kaluzny, an officer and employee of defendant, if they could use the forklift to raise the roller and he agreed. Kaluzny then drove the forklift, picked up the roller bar on the forks and brought it over to the door opening. Keltz and Testa testified that a first attempt to lift the roller bar to the top of the door opening was made, but that the forklift could only raise the bar to within 6 inches or a foot of the required height. Kaluzny decided to use a platform in order to get the additional height needed, and he set the roller bar down, drove the forklift truck to another location, and returned with a platform. It was "bed shaped," made of steel, about 8 feet long, 6 feet wide, and 4 feet high, with four legs for a base and railings on two sides which extended up about 3½ feet above the level of the platform. Kaluzny lifted the roller bar with the forklift and placed it on the railings of the platform. The plaintiff stepped onto the platform to hold the bar in place. He testified that this was necessary to keep the bar from rolling off. Keltz ascended a ladder next to the door opening to assist in placing the roller bar in position when it was elevated to the proper height. Kaluzny then lowered the forks of the lift underneath the platform and began to raise the platform, with the roller bar and plaintiff on it.

Kaluzny raised the platform about 6 to 10 feet and then the forklift collapsed. The bar first rolled against the plaintiff, pinning him against the mast of the forklift, and then everything went forward and fell to the ground. Plaintiff fell on his back on top of the steel platform. The forks had come out of the lift truck and were laying on the ground. The plaintiff suffered serious multiple injuries.

Edward Kaluzny testified that after the accident he inspected the forklift to determine what had caused the collapse. He found that a bearing had come out of the mast of the forklift. He discovered the bearing on the ground and placed it on a bench inside the shop that day, but it was never produced as evidence because it could not later be found.

■■ At the close of the trial, plaintiff's counsel tendered an instruction that contributory negligence of the plaintiff was not an issue in the case, and it was refused. Over plaintiff's objection the following instruction was given:

"It was the duty of the plaintiff, under the charges of Count III, before and at the time of the occurrence, to use ordinary care for his own safety. That means it was the duty of the plaintiff to be free from contributory negligence."

Plaintiff contends on appeal that the court erred in not instructing the

jury to find the issue of contributory negligence in favor of the plaintiff. We agree and think that this question was not in the case and that the instruction given tended only to confuse and mislead the jury.

■■ We initially note that the issue of contributory negligence had no relation to count I based on the Illinois Structural Work Act. The object and purpose of that Act is to provide protection for workmen against sustaining injuries when employed in a dangerous occupation. For this reason the defense of contributory negligence is not available to a defendant in an action brought under the Act. See *Schultz v. Ericsson Co.*, 264 Ill. 156, 106 N.E. 236; *Vykruta v. Thomas Hoist Co.*, 75 Ill.App.2d 291, 221 N.E.2d 99.

In regard to count III of the complaint sounding in negligence, we recognize that contributory negligence is ordinarily a question of fact to be decided by the jury. (*Jines v. Greyhound Corp.*, 33 Ill.2d 83, 85, 210 N.E.2d 562, 564.) The defendant directs our attention to *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504, where the Illinois Supreme Court held that issues of negligence and contributory negligence become questions of law "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." 37 Ill.2d 494, 510, 229 N.E.2d 504, 513-14.

The defendant stresses the fact that the jury could reasonably conclude that plaintiff abandoned a safer way of performing the work and voluntarily placed himself in a position of peril, that neither plaintiff nor his foreman brought any chokers, wire, cable or rope to secure the roll bar on the lift. According to defendant, plaintiff's presence on the lift was apparently justified only on two grounds—to keep the roller bar from rolling off and to push it into position once it was lifted to the proper height—and the record shows sufficiently that his presence there was not necessary for either of these purposes and further, that plaintiff could not physically accomplish these purposes from his position on the lift. Since the bar weighed somewhere between 400 and 700 pounds it is argued that the jury might reasonably conclude that plaintiff could not control the bar if it did start rolling and could be injured if it rolled backward pinning him against the mast, and that it would be difficult to push the bar into position by applying pressure at the midpoint of the bar, a better way being to climb ladders at either end of the raised bar and apply pressure there. Defendant thus claims that plaintiff's injuries resulted not only from the collapse of the forklift, but from a combination of the forklift collapse and plaintiff's unjustified presence on the lift at the time of the collapse.

It is undisputed that the roller bar was too heavy to lift into place without the use of equipment such as the forklift. It is also undisputed that the load collapsed when a bearing in the forklift broke, and plaintiff, who was being raised on the forklift with the load, was severely injured.

■■ It is implicit that for a plaintiff to be barred from recovery on the basis of contributory negligence, it must appear that his conduct was not only "negligent," but also "contributory" to his injury. Putting aside *arguendo* the question of negligence, it may be true that in the case at bar plaintiff's presence on the lift "contributed" to his injury. But, indeed, it might also be said in the same sense that his very presence in the defendant's plant at all on the day of the accident "contributed" to his injury. The question is whether his presence on the lift due to his alleged negligence so contributed to his injury *at law* that he is barred from recovery, and the applicable rule of law is that want of care will not bar a plaintiff's recovery unless his injury results from the particular risk or hazard to which his conduct has exposed him. (See Restatement (Second) of Torts § 468 (1965); Prosser, Law of Torts § 65, at 422 (4th ed. 1971.) Illinois courts have expressed the rule in terms of proximate cause—requiring that contributory negligence must be a proximate cause of the injury for it to bar a recovery. *Streeter v. Humrichouse*, 357 Ill. 234, 191 N.E. 684; *Consolidated Coal Co. v. Bokamp*, 181 Ill. 9, 54 N.E. 567; *Buehler v. White*, 337 Ill.App. 18, 85 N.E.2d 203.

In the case under consideration it cannot be claimed that plaintiff's action in standing on the platform being raised unreasonably exposed him to the risk that the lift might collapse. As presented in plaintiff's brief, the total weight of the load on the forklift, including the steel platform, the roller bar and the plaintiff, was about 1365 pounds. Edward Kaluzny, the defendant's own officer and employee, testified that the forklift vehicle lifted weights of 3200 pounds every 10 minutes on a daily basis. The record contains evidence that the forklift, with Kaluzny himself in control of its operation, was first used successfully in lifting the bar, but that more height was needed. Kaluzny, after suggesting that the bar be placed on a platform, then lifted the entire load with the lift, including plaintiff, to a height of approximately 10 feet before the bearing broke and the load collapsed. Nothing that plaintiff did caused it to collapse, and he could not reasonably be expected to anticipate that this would happen.

■■ In the classic case of *Smithwick v. Hall & Upson Co.* (1890), 59 Conn. 261, 21 A. 924, where the trial court's finding of contributory negligence on the part of the plaintiff was reversed and the plaintiff given judgment, the plaintiff was put to work on a platform on defen-

dant's ice-house. The foreman expressly warned him not to work on the east end of the platform which had no railing, since the plaintiff would be in danger of slipping on broken ice and falling to the ground. In spite of the warning the plaintiff worked on the east end of the platform, and he was knocked to the ground and injured by bricks falling from the building above the platform, attributed to defendant's negligence. Although there the plaintiff was clearly at fault in disregarding his foreman's warning and working on the west end of the platform, the court held that that negligence was not the proximate cause of his injury and could not defeat his recovery and commented:

> "The injury to the plaintiff was not the result of [the obvious dangers in standing on the east end of the platform], but was caused through the negligence of the defendant by the falling walls. This was a source of danger of which he had no knowledge whatever. He was justified in supposing that the wall was safe, and would not be likely to fall upon him, no matter where he stood on the platform. He had no reason to anticipate even the slightest danger from that source before or after he changed his position. * * * In changing his position contrary to orders, he voluntarily took the risk of all perils and dangers which a man of ordinary care in his place ought to have known or could reasonably have anticipated; but as to dangers arising through the defendant's negligence from other sources—dangers which he was not bound to anticipate and of whose existence he had no knowledge,—he took no risk and assumed no duty of taking care." ( 59 Conn. at 268-69, 21 A. at 924-25.)

Likewise, in the case at bar, aside from the fact that plaintiff's actions were clearly not in direct contravention of the orders of defendant's agent, but indeed rather with his approval and cooperation, the plaintiff was justified in assuming the forklift was safe and would not likely collapse. He had no reason to anticipate any danger from that source before or after he assumed his position on the lift. His conduct therefore, even assuming *arguendo* it was negligent, cannot legally be considered a cause of his injury. *Cf. Moore v. Edmonds*, 384 Ill. 535, 52 N.E.2d 216; *Cf. also Montambault v. Waterbury & Milldale Tramway Co.* (1923), 98 Conn. 584, 120 A. 145; *Dewire v. Boston & Maine Railroad* (1889), 148 Mass. 343, 19 N.E. 523; *Guile v. Greenberg* (1934), 192 Minn. 548, 257 N.W. 649; *New York, L.E. & W.R.R. Co. v. Ball* (1891), 53 N.J.L. 283, 21 A. 1052; *Berry v. Sugar Notch Borough* (1899), 191 Pa. 345, 43 A. 240.

■■ The defendant asserts that it is not essential that the person charged with negligence should have foreseen the precise injury which

resulted from his act. (*Neering v. Illinois Central R.R. Co.*, 383 Ill. 366, 50 N.E.2d 497; *Sundin v. Hughes*, 107 Ill.App.2d 195, 246 N.E.2d 100; see also *Lewis v. Stran Steel Corp.*, 57 Ill.2d 94, 311 N.E.2d 128.) We do not quarrel with this general proposition, but note also that, as stated in *Neering*, "[t]he injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinary prudent person ought to have foreseen as likely to occur as a result of the negligence * * *." (383 Ill. 366, 380, 50 N.E.2d 497, 503.) Again, even assuming plaintiff's negligence, that is not the case here. In addition, the latter cases dealt with instances where an allegedly negligent act caused injury to a third person, and not where a negligent act by the one injured was set up to defeat his recovery. The courts have generally applied a more restrictive rule in regard to the latter. See Restatement (Second) of Torts § 468, comment c at 518 (1965); Prosser, Law of Torts § 65, at 421-22 (4th ed. 1971).

The only other relevant case cited by the defendant does not lend further support to its position. In that case, *Day v. Barber-Colman Co.*, 10 Ill.App.2d 494, 135 N.E.2d 231, an experienced mechanic was injured while installing an overhead door manufactured by defendant. The door fell on him while he was working below it and while another man was attaching some weight in place to balance the door. The court there held that the plaintiff was contributorily negligent as a matter of law since he was aware that the movement of the door up and down during assembly and installation could be effectively arrested and controlled by "C" clamps, block, and tackle, and yet he failed to use them, placing himself in a potentially hazardous position under the door. Obviously there, the fall of the door during installation without use of the proper devices was reasonably foreseeable and the defendant's injuries resulted from the very risk to which his conduct exposed him.

Other errors are assigned by plaintiff, but as this case must be retried, we do not think it necessary to discuss them at this time and, no doubt, any errors which were made will not occur when the case is tried again. As compelled by our reasoning, the judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.

ADESKO, P. J., and DIERINGER, J., concur.