(No. 79-CC-0114-)

EDWIN J. ADE and CASSEN TRANSPORT COMPANY, Claimants,
*v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed January 26, 1983.*

NORTON, BONIFIELD & ASSOCIATES, for Claimants.

NEIL F. HARTIGAN, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

HOLDERMAN, J.

This claim arises as a result of a motor vehicle accident which occurred on October 25, 1978, at approximately 4:00 p.m. on the Interstate 55-70 bridge across the Mississippi River between St. Louis, Missouri, and East St. Louis, Illinois.

Claimant, Edwin J. Ade, was driving an auto transport truck for his employer, Cassen Transport Company, when it collided with a State of Illinois emergency traffic patrol truck being driven by Jimmy Simons. Both drivers were in the course of their employment at the time of the accident.

Claimant had just loaded his truck with five cars and a van at his terminal in Fenton, Missouri, and was en route to Wisconsin. He was driving east across the bridge. There were four eastbound lanes on the bridge

and his vehicle was in the second lane from the left at the time of the accident. Respondent's truck was also traveling east on the bridge and was in the first lane on the left.

The road in this particular area consists of four eastbound lanes, two carrying traffic north on I 55-70 and two carrying traffic off the interstate onto local roads. It was Claimant's intention to continue north on the interstate highway. Upon entering this area, Claimant pulled into the second lane from the left which was the lane he was occupying at the time of the accident. The truck being driven by Simons was also traveling east on the bridge and was in the first lane from the left. The traffic in Claimant's lane was clear in front of him for several hundred feet. According to his testimony, Claimant was driving at about 30 to 40 miles per hour. The traffic in the first lane, which was to claimant's left, was heavier and was moving slower. The truck being driven by Simons was ahead of Claimant. When Claimant pulled next to the truck, Simons' truck swerved to the right into Claimant's lane of traffic, striking Claimant's truck, and causing him to swerve to the right. With considerable difficulty, Claimant was able to bring his truck under control.

It must be noted that Claimant's truck never left its proper lane of traffic and the only deviation was when the Respondent, without warning, swerved his truck into the truck being driven by Claimant, colliding with Claimant's truck.

Claimant's truck suffered some body damage, a blown tire and damage to the steering mechanism. The front bumper was torn off the State truck and there was damage to the radiator and the body of the truck.

A second Illinois emergency truck was following not

far behind the truck that caused the accident. The driver of the second truck saw the truck being driven by Simons suddenly swerve to the right about two feet into Claimant's lane of traffic, causing the accident.

Simons, the driver of the truck that caused the accident, testified he was driving on the bridge in the left lane of traffic, and he applied his brakes when the traffic ahead of him slowed, and this braking pulled his truck to the right and into Claimant's vehicle.

Respondent is not disputing the negligence of its employee but contends that the evidence shows Claimant was speeding and therefore guilty of contributory negligence. There is not one scintilla of evidence that would indicate that speeding had anything to do with the accident in question. The entire record points to the fact that if the Respondent's truck had remained in its proper lane, this accident would not have occurred.

Claimant, who had been a truck driver for a number of years with the same company and had served in the United States Navy, testified he had considerable difficulty getting his truck under control after the accident happened. He also testified that he thought he was going to go off the bridge and into the river and it was only with considerable physical exertion on his part that he was able to get the truck back into its proper lane. In view of the fact the left front tire of the truck was deflated by the accident, it is easy to understand why there would be considerable difficulty in steering the vehicle.

Several years prior to this accident, Claimant had some problems with his back but they were apparently cleared up, according to his testimony and that of the doctor who took care of him. The evidence disclosed that he had not taken any treatments or had any com-

plaints for a considerable period of time prior to this accident.

The truck driven by Claimant was taken back to the company's headquarters after the accident and some repair work was done on it. The next time Claimant took this truck out, he attempted to drive it and had difficulty controlling the steering, and it was taken back for further repairs. This happened on two occasions and is rather indicative of the force with which it was struck by Respondent's truck and the damage it sustained.

Claimant complained of injuries to his back and continuing dreams of going off the bridge and into the river. He was given medical treatment and an examination revealed he was having muscle spasms, his back was exceedingly tender, and any lifting or hard work aggravated the injury.

Claimant was off work for approximately 44 weeks, was hospitalized on several occasions, was placed in traction, given physical therapy, sedatives, and various other kinds of treatment. Claimant testified he consulted a psychiatrist for his continuing dreams of going off the bridge. The accident and subsequent problems evidently affected Claimant's personality because he and his wife encountered considerable marital difficulties which finally resulted in divorce. His treating psychiatrist testified that it was his opinion that the irritation and aggravation of the pain in his back, together with his enforced idleness, was the reasonable result of the accident in question.

This Court has held that before a Claimant can recover in cases of this sort, he has the burden of proof and that Claimant must prove by a preponderance of the evidence that (1) Respondent was negligent; (2) that such negligence proximately caused the injuries; and (3) that

Claimant was in the exercise of due care for his own safety and therefore free from contributory negligence.

Respondent relies solely on the issue of speeding and yet there is not any evidence of any kind or character that would indicate speeding had anything to do with this particular accident. The accident was caused by the negligence of Respondent in swerving into the traffic lane in which Claimant's truck was being driven. It is therefore clear there was not any contributory negligence on the part of Claimant. See *Schaav v. State* 26 Ill.Ct.Cl. 344; also *Testa v. Kaluzny Brothers, Inc.* (1974), 23 Ill. App. 3d, 841.

The record indicates that Claimant was hospitalized several times in the St. Louis area and received various medical, psychiatric and chiropractic treatments. His total hospital bills are in the amount of $5,338.40; his doctors' bills are $3,411.75; total expenses for ambulance, lab tests and medicines are $319.05; his estimate of transportation costs are $489.52; and total lost wages are $24,172.28. Claimant has received from workmen's compensation $3,372.05 in payment of some of his medical and hospital bills, $6,567.68 for the time he lost from work, and a $16,000.00 settlement for his permanent injuries. The evidence shows he is still spending approximately $20.00 per month for pain medication which he uses daily.

The medical evidence introduced by Claimant shows he has soft tissue damage along his entire spine, that this is a permanent condition, and would be constantly aggravated by the type of work Claimant does which requires heavy lifting and exertion. Dr. Edstrom testified that Claimant will have to continue to seek chiropractic treatment to relieve his pain, probably as often as once a month for the rest of his life.

Dr. Keith Isenberg, a resident in training in psychiatry

at Washington University Medical School in St. Louis, testified he started treating Claimant on July 20, 1979. Claimant had given Dr. Isenberg a detailed history of his accident and subsequent problems, including his dreams about going off a bridge in this truck. This history included details of treatment by numerous doctors for the back pains, headaches, troubles with Claimant's marital relationship, alcohol abuse, depression and sleeplessness. A course of treatment was initiated which included antidepressant medications, talk therapy, marital therapy and counseling on abstinence from alcoholic beverages. The doctor saw Claimant on various occasions and testified that Claimant was treated by several other doctors at the clinic. He testified he believed the dreams about the accident, fear about possible mechanical defects in his truck and anger were overpowering and initially disabling to Claimant and were part of a secondary depression. He stated it was his opinion that the depression had been caused by the accident and the symptoms might recur so as to prevent Claimant from working in the future and might be permanent.

It appears from the record that Claimant sustained painful back injuries which were aggravated by his psychiatric problems. For a period of almost one year, Claimant was completely disabled by his condition. At the time of the hearing, Claimant had reduced his chiropractic treatments and ceased his psychiatric sessions and testified he felt much better.

The record shows Claimant has received a total amount of $25,939.73 from his workmen's compensation claim. The statute governing claims of this nature provides for the repayment to the employer for all amounts paid by it for medical, surgical and hospital services of Claimant.

Since no evidence has been presented in regard to

this lien other than the total amount of compensation paid, the Court hereby awards an amount of $50,939.73 jointly to Claimant and his employer, Cassen Transport Company, as full, final and complete settlement in this cause.