Clarence E. Schmidt, Appellant, v. Hugo Anderson, Appellee.

Gen. No. 40,380.

Opinion filed June 21, 1939.

RYAN, SINNOTT & MILLER, of Chicago, for appellant.

RIDER & THUMA, of Chicago, for appellee; CHESTER D. KERN, of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

On March 6, 1936, plaintiff filed a complaint in the circuit court of Cook county, the first count of which charged that on September 6, 1935, he was injured while crossing Lawrence avenue at a point west of north Ashland avenue in Chicago, due to the negligence of the defendant in operating a motor vehicle and while plaintiff was in the exercise of ordinary care for his own safety, and the second count of which charged the defendant with wilful and wanton conduct in operating the automobile, as the proximate result of which plaintiff was injured. Issue was joined and the cause was tried before a jury. At the close of all the evidence the court, on defendant's motion, directed a verdict of not guilty as to the second count, which was the wilful and wanton count. The case went to the jury on the first count and a verdict finding the defendant not guilty was returned. Plaintiff moved for a new trial, which was overruled, and judgment was entered on the verdict, to reverse which this appeal is prosecuted.

On September 6, 1935, plaintiff, then 32 years of age, was a driver and salesman for the Mama Cookie

Bakeries, Inc. In the course of his employment he called on a store operated by his father-in-law, Wilbert Cox, at 1607 Lawrence avenue. The store was located on the south side of the street, 57 feet west of the building line on the west side of Ashland avenue. Lawrence avenue is an east and west highway and Ashland avenue is a north and south highway in Chicago. These highways intersect. In order to aid the flow of traffic, "Stop" and "Go" lights are operated at the intersection. Four steel rails are laid in the center of Lawrence avenue, over the south two of which trolley cars operate in an easterly direction and over the north two of which trolley cars operate in a westerly direction. The sidewalk in front of Cox's store is 9 feet 11 inches in width. There is a safety island located on the south side of Lawrence avenue 15 feet north of the curb. Plaintiff testified that the safety island is from 60 to 75 feet long. The plat in evidence shows that the safety island proper is 64 feet 8 inches in length. In addition there is a barrier at the west end thereof. The purpose of the barrier is to protect pedestrians who are waiting on the safety island to board street cars. Plaintiff testified that he had made a delivery at Clark and Wilson avenues; that he then drove north on Ashland avenue to Lawrence avenue and west on Lawrence avenue to a point about 50 feet west of the intersection, where he parked his truck on the north side of the street, the rear of his truck being 10 or 15 feet east of the entrance of the store where he was going and on the opposite side of the street. It was then about 8:30 a. m. Plaintiff crossed over to the store on the south side of the street where he remained for 10 or 15 minutes. He then left the store, intending to return to his truck. He stopped to chat with a colored man a few minutes and then proceeded. When plaintiff reached the curb he looked toward the west. He did not observe any traffic in the street at the time except an eastbound automobile, which was

just west of the north and south alley and which was being driven in the eastbound street car tracks. The alley was about 125 feet west of the point where plaintiff stood on the curb. He testified that he saw the automobile coming from the west just west of the alley. at the time he started to cross the street to the safety island. The point where he stepped off the curb was 10 feet east of the store entrance and about 12 or 15 feet from the west end of the safety island. He proceeded in a northerly direction. Plaintiff estimated the speed of defendant's automobile at 30 to 35 miles an hour; stated that his eyesight was good; that he was about 50 feet west of the cross walk when he got off the curb to cross the street; that there were traffic signals at Lawrence avenue; that he did not notice the color of the lights in the traffic signals; that he was not concerned with the lights; that he was watching the traffic; that when he left the curb he did not see any traffic coming from the west other than the car that was in the car tracks that later struck him; that there was a street car approaching in the distance coming from the west, but it was beyond the automobile; that he did not hear any signal or horn sounded by the automobile; that he did not observe any indication from the automobile that it was going to turn out of the track; that when the automobile was about 35 or 40 feet west of him, it turned out of the track and was driven in plaintiff's direction in the space between the south curb and the safety island; that when the witness saw the automobile back near the alley, the same was traveling at a speed of between 30 to 35 miles an hour; that there was no change in the speed of the car at any time; that when the witness got a little over half way to the safety island, the automobile swung out of the car tracks and came towards him; that he hesitated momentarily to see whether the automobile was going in back of him or in front of him; that he made a quick step to get to the safety island and was struck; that

he did not remember anything from then until the time he regained consciousness in the hospital; that he was in the hospital 28 days under the care of a physician. He described his injuries and gave testimony as to his loss of earnings. On cross-examination, he testified that he looked to the west before he walked into the street; that the automobile was just west of the alley; that he watched the automobile right along; that when the automobile was between 30 and 35 feet away from the witness, it turned out of the track between the safety island and the curb; that the witness walked toward the safety island, and that when the automobile turned out of the car tracks, the witness was about two-thirds of the way across to the safety island, about three or four feet from the safety island. Over objection of plaintiff, counsel for defendant asked the witness whether he had filed a claim with the Industrial Commission of Illinois. He was permitted to answer and he answered that he had. Plaintiff's counsel moved to strike the answer, which motion was overruled.

Wilbert Cox, who operated the food shop mentioned, testified that he did not witness the accident. He stated that after plaintiff had left his shop, his attention was attracted by the noise of an automobile suddenly stopping, which sounded like brakes scraping or tires sliding on the pavement. He went outside and observed the automobile. It was stopped and headed toward the east, "25 or 30 feet maybe more, maybe a little less east of where the store was, east of my store. My entrance is on the east side of the store." Witness stated that when he went out he saw plaintiff "lying on the sidewalk or on the pavement. He was about the width of the car or, possibly, three or four feet from, in the street from the safety island. He was at the front of the automobile. The automobile was possibly 20 or 25 feet east of the door into my store."

The defendant, Hugo Anderson, testified that he had been a janitor for 18 years; that at the time of the accident he was working as a janitor at 2018 Berwyn avenue in Chicago; that on the morning in question he was driving from the latter building on his way to 916 Fletcher street, Chicago, intending to go east on Lawrence avenue to Ashland avenue and south on Ashland avenue; that he was driving between 20 and 25 miles an hour as he proceeded east on Lawrence avenue; that he was driving in the eastbound street car tracks; that as he approached Ashland avenue and before he got to the safety island, he turned to the south between the curb and the safety island; that he intended to make a right turn on Ashland avenue; that when he turned out of the street car tracks he was about 40 feet west of the safety island; that he was then "just a little bit east of the alleyway"; that when he turned out of the track, he did not turn sharply; that he was then "traveling about around 15 and 20. I did not see anybody walking on the street. I saw people on the sidewalk, the curb, and I saw the safety island when I was about, well, about 50 or 60 feet, I saw some people but I didn't pay any attention. Some of those people were on the sidewalk and some on the safety island. I saw Mr. Smith there. I didn't see him before he run across the street, run across to the safety island. That is the first time I saw him personally. At that time when I saw him he run across and picked up something on the safety island. When he run across I was about around 30 feet from the safety island. I was out of the car track at that time. After I saw Mr. Smith running across the street he stooped over when he come to the safety island." He stated that when he saw Mr. Schmidt stoop over, that action occurred on the street alongside the safety island; that such action by plaintiff occurred on the south side of the safety island; that the witness was about eight feet away from plaintiff when the latter stooped over; that defendant's automobile was traveling along about three feet from the south side

of the safety island; that at that time defendant was traveling below 15 miles an hour; that plaintiff turned around without a rise and "took one step toward my car and run into the front side of my fender. Into the left side fender. After he picked up something he faced east and turned to the south with his back to me. He didn't stand up before he was going, made a perfect turn, then he took a step and he was straightened out. He came in contact with my left front fender, right in the center of the fender. When I say 'right in the center' I mean the center between the front and the rear of the fender, the side of the fender. Then I did all I had to do, I stopped. Mr. Schmidt was laying alongside of my front wheel and between the curb and my front wheel. I mean safety island." Witness stated that the brakes on his automobile were in good condition; that the pavement was dry and the weather good. On cross-examination, he stated that he had "plenty of room to drive in the street either in the car tracks or in the space between the car track and the curb"; that he had a clear unobstructed view and good four wheel brakes; that he saw people on the safety island and sidewalk as he approached the intersection; that he was about 30 feet west of the safety island when he got both wheels of his car out of the rails; that he was then going around 15 miles an hour; that in the operation of turning he slowed down from 20 to 25 miles an hour to 15 miles an hour; that as he started to make the turn he took his foot off the gas and put it on the brake; that when he got both of the wheels out of the track and headed in a southeasterly direction he was going about 15 miles an hour with his brakes partially set. The following questions propounded to and answered by the defendant, appear:

"Q. Now, at that time if you wanted to stop your car, you could stop it almost instantly, could you?

"A. Sure. I don't know in how many feet I could stop it going at 15, I couldn't tell you. I could stop in 10 or 12 feet if I had my brakes partly set. There was

nobody between the track on which I had been driving and the east curb at the time I got my front wheels out of the track. Nobody was in that space at all at that time. At the time I was 30 feet from the safety island there was nobody in the street ahead of me. Everybody was in a safe place on the safety island and on the sidewalk. I kept my brakes on very light. I did not have to put my foot on my gas any more, because I could go 5 miles an hour and had plenty of time to make a right turn. After the application of my brakes and after I slowed down from 20 to 25, I still kept them on lightly. The car still kept slowing down right along. When I got to the end of the safety island I was going just about 15 miles. When I got to the end of the safety island there was Mr. Clarence run across, Mr. Schmidt. I was about 30 feet from the safety island when he run across.

"Q. When the front of your car was 30 feet west of the safety island you saw him suddenly run across the street?

"A. Yes, sir. He run all the way across to the safety island. I don't know how fast or not, but he run, he didn't walk. While he was running from the curb over to the safety island I went around 15 feet or a little below. I don't know whether he was going about as fast as I was when he was running over there. I know how far it is, from the curb over to the safety island. It is 15 feet. While he was running 15 feet I was going toward him 15 feet. When he got over to the safety island before he stopped or stooped over or anything else, I was just about 8 feet away from him. I was slowing down right along. I couldn't exactly say whether I was still going 15 miles. I said I was going just about 15, a little below, probably, when Schmidt got over to the safety island. I was about 8 feet from Schmidt then. I am sure that I was just about 8 feet. When I was about 30 feet from him he left the curbstone and ran toward the safety island.

While he was running over to the safety island I traveled about the same distance or about 15 feet. When he got there I was about 8 feet from him. I was going a little below 15 miles an hour because I was slowing down right along. I had my foot a little on the brake as I headed to. You know how you may be stopped. The left side of my car was about three feet from the safety island. Then Schmidt stooped down. I saw him stoop over and pick something up. I didn't see what he picked up. I didn't look in the street. I didn't see any package or article, I just saw the man stoop over. He stooped all the way over onto the safety island. He didn't get up on the safety island, I am sure. After he stooped he didn't straighten up again, he turned around at the same time when he straightened up. While he was stooped over he made a turn. He made a turn to the right. He turned away from me. He turned with his back to me. I was just alongside of him when he turned.

"Q. And about three feet from him?

"A. Not quite. There was about three feet between the curb and car. He was in between there. It took only one step to make a touch with me. It would only take one step to go three feet. He was a great big fellow. He run about 230 or 40. He occupied that three feet of space there easily. I did not turn out to the right I did not have reason to. If I knowed he made a turn I would have swung to the right to miss him. I wouldn't have hit him when I swung over in the space. I would have missed him by a foot if he hadn't run into me. But he turned around and ran into me. He ran into the side of my fender. Then I stopped. I don't know how far I went with my car before I stopped. He fell and I stopped alongside of him. Of course, he fell and I stopped right there alongside of him. He did not have no chance to run east. He just took one step into my car. I was driving so close to the safety island because I was right between. I was

closer to the safety island than I was to the curb but I was all by myself in the street. I saw Schmidt leaving the curb, when I saw him leaving the curb I had ample time to stop when I first saw him leave the curb. When he ran across in front of me I figured he was out of harm's way, that he was going to board a car. When I kept on driving toward him when he was in that three foot space, stooped over, he was in a safe place. We will say about three or four feet of my car had passed him when he turned around because he was right in the center of my front fender. My car was just about the center of the safety island when it came to a stop, little bit more east. A little bit east of the center. That would be just about past that number 1605, just about opposite the corner drug store. I didn't pay no attention to whether there was a wide store, a drug store on the corner at that time. When I came to a stop this man was lying in that three foot space between my front fender and the safety island. I am sure of that. I did not blow my horn there that day. I didn't have no reason. There was nothing, not any reason. There was nobody else in the street. There was nobody crossing the street. I never figured how many people I saw on the safety island. I don't know how many there was.''

John Egan testified for defendant and stated that he was a police officer assigned to the Accident Prevention Bureau; that he tested the brakes on the car on the day in question and found that they were in good condition. He stated that when the automobile was being driven at 25 miles an hour he could stop it in approximately 20 feet, which was within the requirement of the statute.

No eyewitnesses testified outside of the plaintiff and the defendant.

Plaintiff argues that the court erred in directing a verdict of not guilty on the second count of the complaint, which charged the defendant with wilful and

wanton conduct. The rule is well established that in deciding a motion to instruct the jury to find the defendant not guilty, it is the duty of the court to consider the evidence in its most favorable aspect to the plaintiff, together with all reasonable inferences arising therefrom. The question presented on such a motion is whether there is any evidence fairly tending to prove the plaintiff's complaint.

As to whether the evidence required that the issue of guilt under the second count be submitted to the jury, we shall first consider what our Supreme Court has said as to wilful and wanton conduct.

In *Brown v. Illinois Terminal Co.*, 319 Ill. 326, the Supreme Court said: ''A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of the impending danger, to exercise ordinary care to prevent it, or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.'' There is evidence that plaintiff stepped into the street at a time when defendant was driving in the rails; that when 30 or 40 feet distant, defendant turned his car from the rails for the purpose of passing between the safety island and the curb. He then had a stretch of pavement 15 feet in width in which to drive his automobile. There was ample room for him in which to travel in the center or on the right side of the south side of the pavement. Instead, he drove close to the safety island and struck plaintiff when he had almost reached a place of safety. In this statement we have disregarded the testimony of defendant. There is a clear contradiction in the testimony of plaintiff and the testimony of defendant. A perusal of the testimony convinces us that the court was in error in withdrawing from the jury their right to pass on the wilful and wanton count of the complaint. If the jury

believed the testimony most favorable to the plaintiff and the reasonable inferences arising therefrom, there was sufficient evidence to permit them to decide that the conduct of defendant, under the circumstances, was wilful and wanton. Defendant suggests that in view of the verdict of not guilty as to the first count, the action of the court in directing a verdict as to the second count should not be disturbed. The jury was instructed that contributory negligence was a defense to plaintiff's action. As to the second count, plaintiff was entitled to have the jury told that if the defendant was guilty of wilful and wanton conduct, contributory negligence was no defense. We are not permitted to look into the jury room and to infer that the jury found the defendant not guilty of negligence. Plaintiff argues that it is as likely that the jury found that defendant was negligent, but that plaintiff was guilty of contributory negligence. We are satisfied that the question of defendant's wilful and wanton conduct was an issue of fact which should have been submitted for the determination of the jury. On that charge, contributory negligence is no defense.

Having decided that the case will have to be retried in so far as the second count is concerned, the question remains as to whether the verdict of the jury shall be allowed to stand as to the first count. Plaintiff urges that as to the first count, the verdict is against the manifest weight of the evidence. After a careful examination of the record, we are of the opinion that in submitting the first count for the determination of the jury, the court acted properly. Whether the plaintiff was in the exercise of due care and caution for his own safety and whether the defendant was guilty of negligence which was the proximate cause of the injuries, were propositions to be resolved by the jury. As indicated in our discussion of the testimony as to its application to the second count, we find that there was sufficient evidence for the submission of the case to

the jury on the first count. We cannot hold that the verdict is contrary to the manifest weight of the evidence. We do not agree with the contention of plaintiff that the testimony offered in support of defendant's theory was incredible and inherently improbable. The jury heard the witnesses and observed them and had a right to decide on what credence to give to their testimony. However, for other reasons which we shall now discuss, the case should also be retried as to the first count.

The court, over objection, permitted defendant to interrogate plaintiff on the subject of whether he had filed a claim for compensation under the Workmen's Compensation Act. It is conceded by defendant that any evidence that the plaintiff was within the Compensation Act was irrelevant and inadmissible, and that its wilful injection into the evidence for the purpose of influencing a verdict would be error. Defendant insists, however, that the rule is not applicable to the facts of the instant case. Plaintiff examined other witnesses on the same subject and defendant contends that because it did so, he cannot now complain. In view of the action of the plaintiff in examining other witnesses on the same subject, we would not reverse the judgment on that ground. As the case is to be retried, however, we suggest counsel should avoid a repetition of the offense.

Plaintiff complains as to Instructions No. 13 and 18 given in behalf of defendant. Instruction No. 13 reads as follows:

"If you believe from the evidence under the instructions of the court, that the defendant is not guilty of the negligence charged, or that plaintiff was guilty of contributory negligence, then you have no right merely because you believe the plaintiff has been injured, if he was injured, to compromise the question of defendant's liability and grant plaintiff some amount merely because he has suffered damages. In either case, it is

your duty to bring in your verdict in favor of the defendant.'' Plaintiff insists that the language constituted a peremptory instruction and therefore must contain every element necessary to a verdict, and that each element must be clearly and accurately defined. Citing *Illinois Iron & Metal Co. v. Weber*, 196 Ill. 526, 531; *Ratner v. Chicago City R. Co.*, 233 Ill. 169; *Bald v. Nuernberger,* 267 Ill. 616; *Brewster v. Rockford Public Service Co.*, 257 Ill. App. 182, 190; *Cantwell v. Harding*, 249 Ill. 354, 358; *Cromer v. Borders Coal Co.*, 246 Ill. 451, 457. Defendant responds that the instruction was not a peremptory instruction; that in fact it was a cautionary instruction. In effect, it is a peremptory instruction. Counsel could have submitted the usual instruction that the jury are instructed that if under the instructions of the court they found from the evidence in the case that the plaintiff was not entitled to recover, then they would not have occasion to consider the extent of damages or the character or the extent of the injuries of the plaintiff, whether slight or serious. Instruction No. 18 reads as follows:

''The court instructs the jury that before you can return a verdict for the plaintiff and against the defendant for negligently causing injury and damage you must find from a preponderance or greater weight of the evidence each of the following facts:

''A. That at and immediately prior to the accident in question the plaintiff was not guilty of any negligence which in any degree contributed to cause said accident.

''B. That the defendant was guilty of negligence as charged.

''C. That such negligence of the defendant, if any, was the proximate cause of or proximately contributed to cause said accident.'' It will be noted that paragraph A requires that the jury, before finding for the plaintiff, determine that he was not guilty of ''any negligence which in any degree contributed to cause

said accident." Plaintiff insists that the only contributory negligence which will bar plaintiff is such negligence as proximately contributed to cause the accident, and that the instruction imposed upon the plaintiff a burden of proof far beyond anything warranted in the decisions and constitutes reversible error. Defendant repels the argument by saying that "It requires no citation of authorities in this Court to support the rule that the negligence of a defendant must always be the *proximate* cause of the injury, but it does not follow that the negligence of a plaintiff is never a bar to his right to recover *unless such negligence causes or proximately contributes to cause the accident,* as contended by counsel for plaintiff. Such an argument shows confusion and accounts for many citations involving instructions given by a *plaintiff* on the actionable negligence of a *defendant.*" We are, therefore, called upon to decide whether the instruction was erroneous in not telling the jury that the only contributory negligence which will bar plaintiff's right to recover is such negligence as proximately contributes to cause the accident. At common law contributory negligence is a complete defense to an action to recover for an injury negligently inflicted. Apparently, this doctrine was first authoritatively enunciated in the case of *Butterfield v. Forrester,* 11 East 60; sec. 501, p. 942, 45 Corpus Juris, and reads as follows:

"501. Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury, and which, concurring and coöperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause. . . . It has been said that there is no substantial distinction or essential difference between negligence for which defendant is responsible and contributory negligence, and the rules of law applicable to the former are, in general, ap-

plicable to the latter. As in the case of defendant's negligence, contributory negligence may be due to either acts of omission or commission. In other words, contributory negligence may consist in doing the wrong thing at the time and place in question, or it may arise from doing nothing when something should have been done.

"THERE ARE TWO ESSENTIAL ELEMENTS IN CONTRIBUTORY NEGLIGENCE: (1) Negligence for which plaintiff is responsible. (2) Causal connection between such negligence and the injury complained of.

"502. DEFENDANT'S CONCURRENT NEGLIGENCE IMPLIED. The term 'contributory negligence' necessarily presupposes negligence for which defendant is responsible, which would of itself sustain an action but for the concurrence of the contributory negligence. If the negligence for which either defendant or plaintiff is responsible is the sole proximate cause of the injury, there can be no contributory negligence, and where there is no actionable negligence for which defendant is responsible, the question whether contributory negligence exists is immaterial. However, some courts have approved of the use of the term 'contributory negligence' to indicate not only cases of concurrent negligence, but also those in which the negligence chargeable to plaintiff is the sole proximate cause of the injuries sustained.

"503. While, under certain circumstances, the same acts or conduct may render one guilty of contributory negligence or give rise to the defense of assumption of risk, 'assumed risk' and 'contributory negligence' are distinct doctrines of law, and are not synonymous. The doctrines are distinguished from each other elsewhere in this work. In common parlance, however, the reckless disregard of a danger is often spoken of as an assumption of risk by the party exposing himself thereto, although it is not the ordinary assumption of risk arising out of contract relations.

"504. The law contemplates that every person having the capacity to exercise ordinary care for his own protection against injury will do so, and, if he fails to exercise such care, and such failure, concurring and coöperating with the actionable negligence of defendant, contributes to the injury complained of as a proximate cause, he is guilty of contributory negligence. This is true, even though he was doing what he had a right to do. In the absence of any statute imposing a higher degree of care, ordinary care is all that is required. In other words, in order to be contributory negligence, the acts or omissions contributing as a proximate cause of the injury complained of must constitute negligence. Where there is an exercise of ordinary care, there is no contributory negligence." Section 465, Restatement of the Law of Torts, states that the rules which determine whether the plaintiff is guilty of contributory negligence which will bar his recovery against a negligent defendant "are the same as those which determine whether the conduct of the actor as defendant is sufficient to make him responsible and, therefore, liable for a harm to another." We now turn to consider what our Illinois courts have said.

In *Belvidere Gas & Electric Co. v. Boyer*, 122 Ill. 116, 123, the court said: "Under all the circumstances, we conclude the question whether Boyer's negligence contributed to cause his death was properly submitted to the jury to be determined as a question of fact. 'Contributory negligence is a want of ordinary care upon the part of a person injured by the actionable negligence of another, combining and concurring with that negligence, and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred.' 2 Am. & Eng. Ency., 371. Briefly defined, it is a failure to exercise ordinary care. What is ordinary care must necessarily vary with the surrounding circumstances. Our Supreme Court has defined it to mean, that care which a reasonably prudent

and cautious person would take to avoid injury, under like circumstances. *Chicago City Ry. Co. v. Dinsmore,* 162 Ill. 658; *Chicago, St. Louis & Pittsburg R. R. Co. v. Hutchinson,* 120 Ill. 577. When the defendant is guilty of negligence, ordinary diligence is all that is required of plaintiff to entitle him to recover. *I. C. R. R. Co. v. Schultz,* 64 Ill. 172.''

Our Supreme Court in *Krieger v. Aurora E. & C. R. Co.,* 242 Ill. 544, had before it an instruction tendered by the defendant and refused, which directed the jury to find for the defendant if the plaintiff was guilty of any negligence which contributed to any degree to bring about his injuries. Plaintiff argued that the instruction required extraordinary care on his part. The court said:

''. . . but all the puzzling refinements as to degrees of care have been done away with in this court, and the accepted rule is, that if one exercises the degree of care required of him under the circumstances he is guilty of no negligence, but if he fails to do so he is guilty and cannot recover. The instruction was a correct statement of law, but the same rule was given to the jury in various instructions at the instance of the defendant. For that reason it was not error to refuse the instruction.'' That statement of the court was *dictum.*

In *West Chicago St. R. Co. v. Liderman,* 187 Ill. 463, 468, the Supreme Court said: ''Where a party seeks to recover damages for a loss which has been caused by negligence or misconduct, he must be able to show that his own negligence or misconduct has not concurred with that of the other party in producing the injury; and the burden of proof is upon the plaintiff to show not only negligence on the part of the defendant, but also that he exercised proper care and circumspection, or, in other words, that he was not guilty of negligence.''

In *Carson, Pirie, Scott & Co. v. Chicago Rys. Co.,* 309 Ill. 346, 352, the court said:

"It is the settled rule of law of this State that one complaining of negligence merely where there is no willful act or willful and intentional neglect of duty causing an injury, cannot recover if he was guilty of negligence contributing to the injury complained of."

In *Lerette v. Director General of Railroads,* 306 Ill. 348, 352, the Supreme Court said: "Where the defense is that plaintiff's unlawful conduct at the time of the accident was the proximate cause of the accident, the difficult question presented for determination is whether the unlawful conduct was a direct and proximate cause contributing, with others, to the injury or whether it was a mere condition of it. The mere fact that plaintiff was violating the law at the time he was injured will not bar his right to recover unless the unlawful act in some way proximately contributed to the accident in which he was injured. (*Star Brewery Co. v. Hauck,* 222 Ill. 348; *Graham v. Hagmann,* 270 id. 252; *Ensley Mercantile Co. v. Otwell,* 142 Ala. 575, 4 Ann. Cas. 512; *Munroe v. Hartford Street Railway Co.,* 76 Conn. 201, 56 Atl. 498.) In determining whether the unlawful conduct of plaintiff will bar his right to recover there must be kept in mind the distinction between that which directly and proximately produces or helps to produce the result as an efficient cause and that which is a necessary condition or attendant circumstance of it. If the illegal act is a mere condition which made it possible for the accident to occur but is in itself no part of the accident it will not bar recovery. It is, of course, an essential condition of most accidents that the injured party be where he was at the time he was in order for the injury to occur, and the fact that he would not have been there if he had not been violating the law is not, in itself, a defense. (*Newcomb v. Boston.Protective Department,* 146 Mass. 596, 16 N. E. 555; *Berry v.*

*Sugar Notch Borough,* 191 Pa. St. 345, 43 Atl. 240;
*Tackett v. Taylor County,* 123 Ia. 149, 98 N. W. 730.)
Granting, but not deciding, that appellee's act in climbing through the string of cars, under the circumstances, was an illegal act, it is still a question of fact whether this illegal act was the proximate cause of the injury.''

In *Williams v. Stearns,* 256 Ill. App. 425, 434, this court said:

''Contributory negligence that will bar a recovery must be a proximate cause of the injury.''

In *Consolidated Coal Co. of St. Louis v. Bokamp,* 181 Ill. 9, 18, the Supreme Court said:

''Instruction No. 21 offered by appellant was to the effect that 'if the jury believe, from the evidence, that plaintiff did any careless or negligent act which materially contributed to his injury he cannot recover in this case.' The substance of it is contained in the instruction above mentioned and others. It might be that plaintiff failed to do some act or was guilty of some careless or negligent act which contributed to his injury, yet which was not the proximate cause of the injury, and still be entitled to recover.''

In *Von Stein v. Chicago City Ry. Co.,* 166 Ill. App. 477, 484, the court approved the following instruction:

'' 'One of the defenses relied upon by the defendant in this case is that of contributory negligence. The term contributory negligence is used in the law to designate such conduct on the part of the plaintiff as prevents him from recovering in an action for injuries to himself. Contributory negligence means a failure by the person injured to exercise ordinary care for his own safety which proximately contributes to bring about the injury which is sued for. Ordinary care as used in these instructions means such care, caution and prudence as an ordinarily prudent person would exercise under similar circumstances. Proximately when used in this connection means closely connected with the injury in the order of events and so connected with

the injury that but for the contributory negligence the injury would not have happened. If you believe from the evidence that the plaintiff was guilty of contributory negligence as herein defined, then your verdict should be not guilty.' "

In *Star Brewery Co. v. Hauck,* 222 Ill. 348, 352, the Supreme Court said:

"Even if deceased had been engaged in the violation of an ordinance, to bar a recovery on that ground it must appear that such violation of the ordinance was the proximate and efficient cause of the injury."

In *St. Louis Nat. Stock Yards v. Godfrey,* 198 Ill. 288, 296, counsel contended that "if negligence on the part of the plaintiff affects the chain of causation in any degree, the courts will no longer weigh the negligence of the parties and nicely balance their degrees of negligence. The defendant was entitled to have the jury plainly instructed that if the negligence of plaintiff contributed, in any degree, to the injury, he could not recover." In commenting on the contention, the court said:

"If plaintiff was guilty of any negligence not contributing to the injury, such negligence could not be contributory negligence." The court at page 296 quoted with approval from Mr. Beach in his work on Contributory Negligence, as follows:

" 'Contributory negligence, in its legal signification, is such an act or omission on the part of a plaintiff, amounting to a want of ordinary care, as concurring or cooperating with the negligent act of the defendant, is a proximate cause or occasion of the injury complained of.' "

It will be noted, therefore, that Instruction No. 18 prohibits the jury from finding in favor of the plaintiff unless the defendant was guilty of negligence which was the proximate cause or proximately contributed to cause the accident, while in dealing with plaintff's negligence it requires a verdict of not guilty if plain-

tiff's negligence contributed to cause the accident in any degree. The instruction, therefore, attempts to establish a double standard of negligence. As was said in *Smith v. Toledo & O. C. R. Co.*, 133 Ohio 598, 15 N. E. (2d) 134:

"Negligence and contributory negligence are measured by the same standard, the failure to exercise ordinary care. The plaintiff, in proving his cause of action, and the defendant, in proving its defense, are both entitled to have the same scales used in weighing the testimony presented by each." Contributory negligence is such an act or omission on the part of a plaintiff amounting to a want of ordinary care as, concurring or co-operating with the negligent act of the defendant, is a proximate cause of the injury complained of. Instruction No. 18, therefore, was not in accordance with the law of Illinois.

Because of the views expressed, the judgment of the circuit court of Cook county is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Denis E. Sullivan, P. J., and Hebel, J., concur.