SHANE PETERSON *et al.*, by Maggie Peterson, their Mother and Next Friend, Plaintiffs-Appellees, *v.* JAMES G. CAMPBELL, Indiv. and d/b/a The Central Tap, Defendant-Appellant.

Third District    No. 81-363

Opinion filed April 20, 1982.

HEIPLE, J., dissenting.

Roger L. Williamson, of West, Neagle & Williamson, of Galesburg, for appellant.

Charles M. Bell, of Bell & Pepmeyer, of Galesburg, for appellees.

JUSTICE ALLOY delivered the opinion of the court:

On the evening of June 26, 1978, as James Jenkins and Gale Peterson (the decedent) left the Central Tap, a tavern run by the defendant, James G. Campbell, Jenkins fatally stabbed the decedent with a folding knife. The plaintiffs thereafter brought the instant two-count action, charging the defendant with violation of the Dramshop Act (Ill. Rev. Stat. 1979, ch. 43, par. 94 *et seq.*) and the Wrongful Death Act (Ill. Rev. Stat. 1979, ch. 70, pars. 1, 2). Following a jury trial in the circuit court of Knox County, the jury returned verdicts in favor of the plaintiffs on both counts. The defendant now appeals from the wrongful death verdict only. He presents two issues for review: whether the plaintiffs made a *prima facie* showing that their decedent had exercised due care for his safety and whether the decedent was contributorily negligent as a matter of law. We affirm.

The only witness testifying to the occurrence was the assailant, Jenkins. He testified that he entered the Central Tap in Abingdon, Illinois, at approximately 11:30 a.m. and drank two or three bottles of beer served by the defendant or his wife. After leaving the establishment for a little more than one hour, Jenkins returned and consumed several more bottles of beer. At approximately 4 p.m. Jenkins and an individual started playing pool as a team against the decedent and another person. Although the decedent and Jenkins were not friends, they were acquainted. The pool table was located in a corner of the defendant's tavern. Jenkins' team generally won, and as a consequence the losing team bought the winners more distilled spirits. Jenkins by this time was drinking whiskey as well as beer, and, by his own admission, he was intoxicated. The decedent was also drinking, although Jenkins did not testify as to whether the decedent was intoxicated. After playing pool for about one hour, the decedent and Jenkins began to argue. The decedent shouted threats at Jenkins. In response, Jenkins withdrew a folding hunting knife from his pocket and brandished it at the decedent. The decedent then told Jenkins that if he were to put away his knife, the decedent would "beat up" Jenkins. At this moment the defendant intervened and ordered Jenkins to put down his knife and cease arguing. Both men obeyed and continued to play pool. Meanwhile, the defendant returned to his position behind the bar. He made no call to the police. Calm prevailed for the next hour until the decedent and Jenkins, both of whom had consumed more of the defendant's alcohol in the interim, again began to argue. Jenkins testified that, because of his inebriation, he was unable to remember about what they argued. Again Jenkins brandished his knife while the decedent shouted badinage and threats in return. Jenkins testified that the decedent never attacked him nor threatened to attack him except for saying that if he were to lay down the knife, he would "beat up" Jenkins. Jenkins also testified that, other than that one reference, the decedent's language was not overly abusive. Again, the defendant interceded between the two men and soon their tempers cooled. The defendant returned to the bar, but he made no call to the police nor did he ask the two ruffian patrons to leave the tavern. Jenkins then ordered more beer and whiskey and played more pool with the decedent, who also drank more alcohol. Finally, one hour later, they again began to argue and shout. After the decedent made a threatening remark, Jenkins brandished his knife for a third time. According to Jenkins, he had by then drunk more than 16 bottles of beer and several whiskey drinks since 11:30 a.m. The defendant separated the two and ordered them to leave. Jenkins returned the knife to his pocket and walked to the door. Just as he reached the door, the decedent, who stood about 50 feet from Jenkins, shouted threateningly at him. Jenkins was unable to recall exactly what the decedent said, but his threat made

Jenkins "wary." Again Jenkins pulled his knife from his pocket, but this time he ran back to the decedent and killed him with a single thrust of the knife. He was subsequently arrested and charged with voluntary manslaughter to which he pleaded guilty. At the time he testified in the instant case, he was serving his seven-year term of imprisonment. He admitted on the witness stand that were it not for the alcohol sold to him by the defendant, he would not have killed the decedent.

The only other testimony was that of the decedent's former wife, who said she briefly visited the decedent at the tavern on June 26 at approximately 5:30 p.m. Although the decedent was then drinking alcohol, she testified that he did not appear to be intoxicated. She did not observe Jenkins.

As to the wrongful death count, the court read to the jury Illinois Pattern Jury Instructions, Civil, No. 21.02 (2d ed. 1971), which states that the plaintiffs had the burden of establishing the decedent's use of ordinary care for his own safety before and at the time of the occurrence. Thereafter, the jury returned a verdict in favor of the plaintiffs on both counts.

As a preliminary issue, the plaintiffs ask this court to rule on whether the comparative negligence doctrine announced in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, affects their rights in the instant cause. It does not. The supreme court declared that the *Alvis* rule applies to all causes in which trial commences on or after June 8, 1981; here, the cause came to trial and judgment was entered therein prior to that date. Thus, the issues raised concerning the decedent's possible contributory negligence are properly before this court.

The defendant raises two objections on appeal, both of which concern the sufficiency of the plaintiffs' evidence establishing the decedent's freedom from contributory negligence: whether the evidence established contributory negligence as a matter of law and whether the plaintiffs made a *prima facie* showing that their decedent exercised due care for his safety. Upon careful review of the entire record, we conclude that the evidence was insufficient to support a directed finding in favor of the defendant on the issue of the decedent's contributory negligence and that the evidence supported the jury's finding that the decedent exercised due care for his safety. Accordingly, we affirm the judgment in favor of the plaintiffs.

■■ ■ Before proceeding to a discussion of the sufficiency of the evidence, we believe one comment is in order. Contributory negligence would bar recovery in a negligence action only; it is no defense where the defendant's misconduct is intentional or wilful and wanton. (*Lake Shore & Michigan Southern Ry. Co. v. Bodemer* (1892), 139 Ill. 596, 29 N.E. 692.) Had the decedent's survivors brought the instant wrongful death

action against Jenkins for his battery, the defense of contributory negligence would have absolutely no application. Here, however, they charged the defendant, James Campbell, owner of the Central Tap, with negligence in that he failed to exercise reasonable care in preventing Jenkins' attack on the decedent. Thus, the issue of the decedent's contributory negligence was properly made a part of the present wrongful death action.

■■ According to pre-*Alvis* Illinois law, a plaintiff seeking to recover for injuries caused by the defendant's negligence must plead and prove his own freedom from contributory negligence, in addition to proving the fault of the defendant. Likewise, in a wrongful death action alleging that the decedent's death was caused by the defendant's negligence, a decedent's survivor must plead and prove that his decedent was free from contributory negligence. (*Maki v. Frelk* (1968), 40 Ill. 2d 193, 239 N.E.2d 445.) Contributory negligence has generally been defined as "conduct on the part of the plaintiff, contributing as a legal cause to the harm he has suffered, which falls below the standard to which he is required to conform for his own protection." (W. Prosser, Torts sec. 65, at 416-17 (4th ed. 1971).) A plaintiff's negligence contributes as legal cause to the harm he has suffered if, but only if, it has been a substantial factor in bringing about his harm. (Restatement (Second) of Torts sec. 465(1) (1965).) Two types of contributory negligence are recognized: first, where the plaintiff intentionally and unreasonably exposes himself to danger created by the defendant's negligence of which the plaintiff knows or has reason to know, and second, where the plaintiff's conduct falls short of the standard to which the reasonable person should conform in order to protect himself from harm. (Restatement (Second) of Torts sec. 466 (1965).) Ordinarily, the question of contributory negligence is for the trier of fact when the question arises upon facts from which reasonable persons might draw different conclusions either as to the facts or as to the conclusions or inferences to be drawn from the facts. Furthermore, the issue of proximate cause of an injury is almost always a question reserved for the trier of fact. (*Wainwright v. Truckenmiller* (1981), 96 Ill. App. 3d 1127, 421 N.E.2d 1026.) A court should direct a verdict on the issue of contributory negligence or negligence only "in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.

■■■ Applying these principles to the instant case, we conclude that the issue of the decedent's contributory negligence was properly before the jury and that the evidence supported the jury's finding that the plaintiffs' decedent was free from contributory negligence. It is generally recog-

nized that, in order to lessen the egregious results sometimes occasioned by the operation of the defense of contributory negligence, courts apply a more restrictive definition of negligence where it bars the plaintiff's recovery than where it is used to establish the defendant's liability. (*Testa v. Kaluzny Brothers, Inc.* (1974), 23 Ill. App. 3d 841, 320 N.E.2d 114; Restatement (Second) of Torts sec. 468, comment c, at 518 (1965).) A plaintiff need not be a "super-perfect" human. (J. Mirza & J. Appleman, Illinois Tort Law and Practice sec. 18:1 (1974).) He need only be an ordinary man, with the frailties, errors of judgment, and mistakes of which such a person is susceptible. Accordingly, we have held that contributory negligence must be substantial to bar recovery. (*Schmidt v. Anderson* (1939), 301 Ill. App. 28, 21 N.E.2d 825.) Here, the decedent's final shout, his last bit of braggadocio, directed at Jenkins as he left the tavern cannot be considered a substantial act of negligence. Although he was aware that Jenkins was armed with a knife, which he previously brandished without ever directly threatening the decedent's life during their earlier arguments, no reasonable person would have expected that Jenkins would have retaliated with violence, rather than with his own kind of harmless braggadocio, as he left the tavern. When the decedent shouted at the assailant, they were more than 50 feet apart, and Jenkins was about to leave the defendant's premises. Furthermore, no threatening movement or actions accompanied the decedent's shout. Given these circumstances, we cannot say that no question of fact remained which inevitably indicated that the decedent was contributorily negligent. Moreover, we cannot say as a matter of law that the decedent's shout was conduct constituting exposure to a known danger or conduct falling short of the standard to which a reasonable person should conform in order to protect himself from the harm which causes his injury. We will not bar recovery as a matter of law where the decedent failed to foresee that his assailant would turn from the door, run 50 feet back to the decedent, and, instead of merely displaying his knife, as he did in the past, attack and kill the decedent.

For these foregoing reasons, we affirm the judgment entered in the circuit court of Knox County.

Affirmed.

BARRY, J., concurs.

JUSTICE HEIPLE, dissenting:

Although this appeal concerns a negligence verdict against a tavern owner, it does not involve any issue under the Dramshop Act. One patron of a tavern was stabbed and killed by another patron. The decedent's

children brought a wrongful death action against the tavern owner alleging negligence. The jury returned a verdict of $30,000 in favor of plaintiffs.

As is noted in the majority opinion, this appeal is addressed to only two issues: First, whether a showing was made that decedent had exercised due care for his own safety; and, almost the same issue stated differently, whether the decedent was contributorily negligent as a matter of law.

The majority opinion concludes both issues in favor of the plaintiffs. I dissent. A recitation of the situation as it existed on the day of the stabbing will illustrate, I hope, why I dissent.

Gale Peterson and James Jenkins were shooting pool and drinking in the Central Tap in Abingdon. As the day wore on they became inebriated. The men were pugnacious, arguing steadily. The record does not indicate why. During this wrangling, on three separate occasions, Jenkins pulled a knife on Peterson. On two such occasions the defendant barkeeper intervened telling Jenkins to put the knife away. Peterson had been threatening to beat Jenkins, and told him if he put the knife away he would do so. Jenkins pulled the knife again. Defendant told him to get out. As Jenkins exited, Peterson again baited Jenkins, threatening him with a beating. Jenkins turned, walked up to Peterson, and killed him with a single thrust of his knife.

We admonish jurors that in considering the evidence they are not required to set aside their own observations and experience in the affairs of life. (Illinois Pattern Jury Instructions, Civil, No. 1.04 (2d ed. 1971).) Should appellate courts be held to a lesser standard?

It defies everyday knowledge to conclude decedent did not knowingly expose himself to personal harm and grave danger. His repeated ranting that he would beat Jenkins was not only unreasonable but extreme. Peterson was aware before the stabbing that Jenkins had three times threateningly brandished the knife. This display came during the course of a verbal clash which was ongoing and petulant. Regardless, Peterson continued to bait Jenkins. If the tavern owner had a duty to remove Jenkins from the premises, then decedent had no less an obligation to prevent injury to himself by ceasing his taunting assertions.

The majority's comment that decedent need not be "super-perfect" says nothing at all, let alone anything new. Nobody is perfect. We all know that. The conduct of an individual and his personal responsibility for his own safety is measured by what an ordinary man would do under the circumstances. To say "* * * no reasonable person would have expected that Jenkins would have retaliated with violence * * *" is preposterous. Defendant and his wife thought Jenkins pulling the knife was serious enough to tell him to leave the tavern, after he had twice been

told to put the knife away. The fact that Mr. Peterson could not heed the peril because of his drunkenness does not alter the standard of care upon which his responsibility to prevent harm to himself is adjudicated. Yet, even if one allows for Mr. Peterson's personal alcoholic state, it is quite evident that he was aware that Jenkins was armed, pugnacious and dangerous.

Because Gale Peterson was contributorily negligent as a matter of law, judgment should be entered for the defendant.