728 P.2d 1231

**Teresa Rae SMITH, Plaintiff-Appellee Counterdefendant,**

v.

**Dorothy H. DELVIN, Defendant-Appellant Counterclaimant.**

**No. 1 CA–CIV 7697.**

Court of Appeals of Arizona, Division 1, Department D.

Jan. 28, 1986.

Reconsideration Denied Sept. 3, 1986.

Rosen & Schneider, Ltd. by Barry C. Schneider and David Neal Rosen and Holloway & Thomas, P.C. by Paul W. Holloway, Phoenix, for plaintiff-appellee/counterdefendant.

Lewis & Roca by Paul G. Ulrich, Susan Freeman, Brian Goodwin and Gary G. May, Phoenix, for defendant-appellant/counterclaimant.

JACOBSON, Judge.

On appeal we must decide if the trial court was justified in directing the verdict for the plaintiff/counterdefendant on both the complaint and the counterclaim.

This case arises out of an automobile collision that occurred on the afternoon of October 7, 1981, between vehicles driven by Teresa Smith and Dorothy Delvin, on the Beeline Highway north of Mesa, Arizona. The Smith vehicle was proceeding south in its proper lane of traffic when it collided with Delvin's northbound vehicle, which was positioned partially in the southbound lane. The impact took place in the southbound lane, approximately four feet west of the centerline. Both drivers sustained serious injuries.

On March 23, 1982, Smith filed suit against Delvin alleging the accident was

due to Delvin's negligence in being in the wrong lane, where Smith had the right-of-way. Delvin defended on the grounds that Smith was contributorily negligent in failing to keep a proper lookout. Delvin also counterclaimed against Smith for her injuries. After both sides presented their cases to the jury, the trial court granted directed verdicts in favor of Smith on the issue of Delvin's liability and against Delvin on her counterclaim. The trial court instructed the jury that they must find in favor of Smith and left to the jury only the amount of Smith's damages. Delvin appeals from the directed verdicts in favor of Smith and from the denial of her motions for new trial.

■ Appellant correctly asserts that it is almost never appropriate for the trial court to take the issue of contributory negligence from the jury. The Arizona Constitution states that the defense of contributory negligence "shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury." Ariz. Const. art. XVIII, § 5. In interpreting this provision, the Arizona courts have steadfastly held that the power or duty to settle the question of contributory negligence is strictly a function of the jury. *See, e.g., Alabam Freight Lines v. Phoenix Bakery*, 64 Ariz. 101, 166 P.2d 816 (1946); *Pearson & Dickerson Contractors, Inc. v. Harrington*, 60 Ariz. 354, 137 P.2d 381 (1943). A directed verdict cannot be granted if any evidence shows or tends to show the plaintiff is guilty of contributory negligence. *Flashberg v. Krebs*, 8 Ariz.App. 254, 445 P.2d 456 (1968). On the other hand, the issue of contributory negligence should not go to the jury if there is not sufficient evidence from which reasonable men might conclude that the plaintiff was negligent. *Mitchell v. Colquette*, 93 Ariz. 211, 379 P.2d 757 (1963); *Citizens Utilities Co. v. Firemen's Ins. Co.*, 73 Ariz. 299, 240 P.2d 869 (1952); *Motors Ins. Corp. v. Rhoton*, 72 Ariz. 416, 236 P.2d 739 (1951); *Humphrey v. Atchison T. & S.F. Ry. Co.*, 50 Ariz. 167, 70 P.2d 319 (1937). Additionally, although it is seldom appropriate to take the question of negligence from the jury, *Wilson v. City of Tucson*, 8 Ariz.App. 398, 446 P.2d 504

(1968), a directed verdict is proper where the evidence is such that no reasonable person could find the existence of essential elements of actionable negligence. *Shafer v. Monte Mansfield Motors*, 91 Ariz. 331, 372 P.2d 333 (1962). Appellee maintains that the evidence at trial tending to show that Smith was negligent and contributorily negligent in failing to keep a proper lookout was so insubstantial and speculative that the trial court was correct in taking these issues away from the jury.

This case presents a problem in trying to determine how the accident occurred. Specifically, the difficulty arises in determining how and when Delvin's car entered Smith's lane. Only after resolving this question could a jury decide whether Smith failed to keep a proper lookout. Unfortunately, there were no eyewitnesses to the accident other than the parties themselves. Delvin's version of what happened, which she described in a written statement a few weeks after the accident and in her deposition, differed significantly from the account she had given on the day of the accident. Moreover, Smith's version, which she repeated in a written statement soon after the accident, in her deposition, and at trial, differed from the statement an investigating police officer claimed she gave him on the day of the accident.

A few facts in this case are uncontested. The Beeline Highway in the vicinity of the accident is a two-lane highway with 13–foot wide lanes. Twenty-six-year-old Smith was traveling southward on the Beeline. Because the highway is very flat and straight along this area, Smith's view of the road before her was unobstructed and she could see for a distance of approximately one mile. Smith saw no traffic for a considerable distance, prior to the accident. She testified that she was tired after a busy day at work. She had an open can of Pepsi in the car from which she took a drink from time to time.

The land surrounding the Beeline in this area is desert land, that constitutes part of the Salt River Indian Reservation. A small ranch was situated in the distance to

Smith's right. Approximately 85 feet south of the accident scene, a dirt path leading from the ranch intersects with the Beeline. Approximately 114 feet south of the accident scene, Thomas Road intersects on the left of the Beeline. Approximately .2 miles south of Thomas Road, North Mesa Drive intersects with the Beeline from the right. Vehicles on the Beeline Highway have the right-of-way through this area.

Seventy-three-year-old Delvin was attempting to return from Mesa to her Phoenix home by a route she had not traveled before. She arrived at the Beeline and turned to proceed upon it in a northbound direction. Within seconds, the two cars collided, the front of Smith's car striking the front driver's side of Delvin's vehicle. The impact occurred at approximately four feet across the centerline and into Smith's lane.

■ The key factual dispute concerns how and when Delvin crossed into Smith's lane. There is no question that Delvin was negligent in being in the path of oncoming traffic which had the right-of-way. Nevertheless, a driver may have the right-of-way and still be negligent or contributorily negligent. *Hunsaker v. Smith,* 1 Ariz.App. 51, 399 P.2d 185 (1965). As the Arizona Supreme Court stated in *Henderson v. Breesman,* 77 Ariz. 256, 269 P.2d 1059 (1954):

> [A] driver having the right of way ... is still under an obligation to make that degree of observation ... as [sic] a reasonably prudent person would have made under such conditions.

*Id.* at 261, 269 P.2d at 1063; *See Egurrola v. Szychowski,* 95 Ariz. 194, 388 P.2d 242 (1964). In *Davis v. Weber,* 93 Ariz. 312, 380 P.2d 608 (1963), our Supreme Court indicated:

> The fact that the driver on the favored highway has the right-of-way does not relieve him from keeping a proper lookout and yielding the right-of-way, where he can, to another motorist when the favored driver discovers that the other is not going to yield.

*Id.* at 318, 380 P.2d at 612 (citations omitted). We must determine whether there is any evidence tending to show that Smith failed to keep a proper lookout so as to avoid the accident. If so, the trial court erred in taking the issue of Smith's possible negligence or contributory negligence from the jury.

■ The evidence is conflicting as to whether Delvin entered the Beeline from the right or the left and from where she came. Officer Mauser, who investigated the accident, testified that Delvin told him at that time that she had made a right-hand turn onto the Beeline from Thomas Road. In contrast, Delvin signed a written statement a few weeks after the accident and later testified in her deposition that she turned left from North Mesa Drive, saw Smith's car in the distance, but thought she had sufficient time to make the turn. Officer Mauser testified that Delvin was disoriented after the accident, which might have accounted for the different story she gave at that time. Alternatively, Delvin's physician testified that her resulting brain injury affected her memory, and that an account she gave within 24 hours after the accident was probably more accurate than one given later, after brain surgery.

Officer Mauser testified that he had not tried to obtain a statement from Smith at the accident scene due to her condition. Smith testified at trial that she felt that the car came from the right of the highway, although she also admitted that things happened so quickly that she really did not know what happened. She was positive, however, she had not taken her eyes from the road, and therefore felt that Delvin's car must have abruptly pulled out in front of her.

If this were the extent of the evidence produced, we would agree with Smith that no evidence that Smith was negligent or contributorily negligent had been shown. Delvin's initial report to the officer that she turned right from Thomas Road reveals no evidence concerning when she crossed the centerline. From this, it is impossible to know whether she was in Smith's lane from

the time she made the right turn or did not cross over until she was too close to Smith for Smith to react. If Delvin abruptly pulled out in front of Smith, there can be no showing that Smith had time to react. Delvin's conflicting account that she turned left from North Mesa Drive and was hit before she could clear the southbound lane could not have happened in the way Delvin described it. North Mesa Drive is more than .2 miles south of the location of the accident. If Delvin was hit before she could clear the southbound lane in making her left turn, she must have been entering the Beeline further north. This would be consistent with Smith's story that Delvin suddenly pulled out in front of her.

Other evidence arose, however, concerning how the accident happened. A second patrolman, Officer Martin, assisted at the accident scene and testified he spoke briefly with Smith, who said she observed Delvin make a wide turn onto the Beeline from Thomas Road. Martin also questioned Delvin, who stated that she turned from Thomas Road. Able Lopez, a reserve police officer for the Indian reservation, was the first to arrive at the accident scene. A year after the accident, Lopez signed a written statement in which he told of following a car on Thomas Road that turned right onto the Beeline. He did not know whether the car crossed into the far lane when it made the turn. At trial, Lopez was unwilling to say that the car he followed was Delvin's, but his written statement contains testimony supporting an inference that the car on Thomas Road was Delvin's.

The accident occurred approximately 114 feet north of Thomas Road. Smith testified that her speed was 55 miles per hour. Delvin called an accident reconstructionist who testified that it would have taken Smith between five and eight seconds to travel the 114 feet, depending on the exact path she traveled. He testified that a person presented with a danger in his path needs only .75 seconds to perceive the danger and .75 seconds to react, for a total 1.5 seconds. If Smith had five to eight seconds in which to perceive the danger and take evasive action, and she did not do so,

evidence exists from which reasonable persons could conclude she was negligent.

Delvin's "wide turn" supports an inference that Smith should have perceived the danger for five to eight seconds, beginning when Delvin veered into Smith's lane upon making the turn. Reasonable persons might conclude that if Smith said Delvin made a "wide" turn, she meant Delvin swerved into Smith's lane. The dissent contends that such an inference cannot be made. The fact that reasonable people can make conflicting inferences from this evidence, mandates that the issue be reached by the jury. *Jones v. Munn,* 140 Ariz. 216, 681 P.2d 368 (1984).

We note that the evidence that Delvin turned from Thomas Road into the wrong lane is not compelling. Smith denied that she ever made the statement to Officer Martin. Officer Martin did not inform Officer Mauser, who wrote up the accident report, that Smith made any statement. Both Officer Mauser and Able Lopez thought Smith was in no condition to talk at the time of the accident. Moreover, the phrase "wide turn" does not necessarily describe a turn entering the wrong lane. Nor does the evidence require a conclusion that the turn was made from Thomas Road rather than from some other location. We do find, however, that Officer Martin's testimony about Smith's statement, coupled with the expert testimony concerning reaction time, is evidence that the jury was entitled to hear and from which it could have chosen to find Smith negligent and contributorily negligent. On a review of a motion for directed verdict, the evidence and all possible inferences must be viewed in a light most favorable to the party opposing the motion. *Heth v. Del Webb's Highway Inn,* 102 Ariz. 330, 429 P.2d 442 (1967); *Fidelity-Phenix Fire Insurance Co. v. Garrison,* 39 Ariz. 277, 6 P.2d 47 (1931). If the evidence is conflicting, the case is for the jury. *Harvey v. Kellin,* 115 Ariz. 496, 566 P.2d 297 (1977); *Sills v. Velvin,* 49 Ariz. 553, 68 P.2d 338 (1937). This is not a case in which the jury would be drawing speculative inferences not based on probative facts. *See, e.g., In re*

*Estate of Shade,* 87 Ariz. 341, 351 P.2d 173 (1960). Rather, the evidence here is conflicting, and it is for the jury to decide whether Smith was negligent and contributorily negligent. These issues should not have been taken from the jury.

 Delvin asks us to approve specific language for jury instructions to be given on retrial of the case. We decline to do so. Since the verdict was directed in this case, no opportunity or need arose for the trial court to consider Delvin's requested instructions or for Smith to register any objection to them. We hold only that under the evidence presented, Delvin was entitled to an appropriate instruction concerning the duty of drivers to keep a proper lookout. We leave to the trial court's determination the precise wording of the instruction to be given, based on the evidence presented on remand.

Reversed and remanded.

SHELLEY, J., concurs.

GRANT, Presiding Judge, dissenting:

I respectfully dissent. While I have no disagreement with the general propositions of law cited by the majority, I do disagree with the manner in which they are applied to the facts of this case.

The facts of the case essentially reveal that this was a head-on collision in which one car (Delvin's) was in the wrong lane of traffic. Smith, the driver in the correct lane, was young and very familiar with the particular stretch of roadway. Delvin, the driver in the wrong lane, was elderly, confused and very unfamiliar with the area. The majority bases its decision to reverse the directed verdict for plaintiff Smith on Officer Martin's testimony that at the accident scene Smith stated she had seen Delvin make a "wide turn onto the Beeline Highway from Thomas Road." The majority reasons that one could possibly understand Smith's statement to mean that Delvin turned from Thomas Road into Smith's lane of traffic and continued therein until the point of impact. The majority then decides that because under such a scenario Smith would have had ample time to avoid the accident, a jury question on the issue of

contributory negligence is raised. This is an inference based upon an inference. Therefore, I cannot agree with the majority's analysis and conclusion.

Even if we accept as true Officer Martin's testimony concerning Smith's statements (although his testimony appears to lack credibility), we still must infer a particular meaning from the phrase "wide turn onto the Beeline from Thomas Road". There is no reason why Smith should be held to a standard that requires her to anticipate that Delvin's wide turn will bring Delvin into Smith's lane of traffic. Only by holding Smith to such a standard can it be said that there is any evidence at all that she failed to keep a proper lookout and was therefore contributorily negligent. Such a quantum leap I am unwilling to make. Nor do I believe a plaintiff is required to be such a " 'super-perfect' human." *Peterson v. Campbell,* 105 Ill.App.3d 992, 997, 61 Ill.Dec. 572, 575, 434 N.E.2d 1169, 1172 (1982).

An inference of Smith's negligence must be predicated on a showing that (1) she contributed to the accident by failing to keep a proper lookout and (2) she had sufficient time and room to avoid the collision. Although the driver having the right-of-way must maintain a proper lookout, the driver is under no duty to anticipate the behavior of another driver and is not liable for negligence unless he fails to take action *after* discovering that another driver is about to cause an accident or violate the traffic laws. *Davis v. Weber,* 93 Ariz. 312, 380 P.2d 608 (1963); *Henderson v. Breesman,* 77 Ariz. 256, 269 P.2d 1059 (1954); *Taylor v. Mueller,* 24 Ariz.App. 403, 539 P.2d 517 (1975). Smith's liability must specifically turn on whether she saw Delvin in the wrong lane in time to react. As the majority indicates, without evidence of where Delvin crossed the center line Smith cannot be charged with contributory negligence.

Contrary to the majority's position I do not believe the phrase "wide turn" determined where Delvin entered into Smith's right-of-way. While it could support the

inference that Delvin was continuously driving on the wrong lane from as far back as Thomas Road, it could also mean a number of other things. For example, Delvin may have made a wide turn into the proper northbound lane and only crossed over some seconds before the accident. Alternatively, Delvin could have turned into the wrong lane, corrected herself, and then swerved back into Smith's right-of-way. While the majority observes that conflicting inferences are for the jury, the majority overlooks the fact that only those inferences arising from probative facts are properly before the jury in the first place. *See Schades Estate,* 87 Ariz. 341, 351 P.2d 173 (1960); *Matts v. City of Phoenix,* 137 Ariz. 116, 669 P.2d 94 (App.1983). There are no such probative facts giving rise to any such inferences in this case.

That Delvin was driving in the wrong lane of traffic for a sufficient length of time for Smith, in the exercise of reasonable care, to notice her and avoid the accident is pure speculation on the part of the majority. A jury question on negligence exists only if the party alleging negligence points to the evidence that will satisfy a reasonable mind that negligence actually existed; it is not enough that negligence *might* have existed. *Berne v. Greyhound Parks,* 104 Ariz. 38, 448 P.2d 388 (1968); *McGuire v. Valley Nat. Bank,* 94 Ariz. 50, 381 P.2d 588 (1963). The record does not disclose any additional facts to make the inference that Smith had time to avoid the accident a more reasonable inference than any other. In my view, the "wide turn" statement is not probative of where or when Delvin crossed the center line. Therefore, to submit to the jury the issue of Smith's supposed contributory negligence would be to improperly permit the jury to speculate based on nonprobative evidence. *Casey v. Beaudry Motor Co.,* 83 Ariz. 6, 315 P.2d 662 (1957); *Matts v. City of Phoenix,* 137 Ariz. at 119, 669 P.2d at 97.

Smith relies heavily on the case of *Pearson & Dickerson Contr., Inc. v. Harrington,* 60 Ariz. 354, 137 P.2d 381 (1943). *Pearson,* however is inapposite because it was decided on the basis of there being no

"satisfactory conclusion as to whose was the fault." 60 Ariz. at 357, 137 P.2d at 382. In the case before us no one disputes that Delvin was in the wrong lane of traffic and therefore at fault.

Smith also relies on *Davis v. Weber* for the proposition that a driver having the right-of-way must keep a proper lookout. Smith's reliance on *Davis v. Weber,* however, is ultimately contrary to her position. In *Davis v. Weber,* the Arizona Supreme Court held:

> Even assuming that [defendant] had an unobstructed vision to his right along Peoria Avenue, which he did not have, and assuming that he did not see the Davis vehicle, still there is no evidence whatsoever upon which to predicate an assumption that [defendant] could have anticipated or foreseen that the Chevrolet would not or could not stop. A driver of a motor vehicle is not under a duty to anticipate, in the absence of evidence, that other drivers will cross negligently in violation of the boulevard law. (Citations omitted.)

93 Ariz. at 318, 380 P.2d at 612.

Finally, Smith relies on *Egurrola v. Szychowski,* 95 Ariz. 194, 388 P.2d 242 (1964). *Egurrola* like *Davis v. Weber* is an intersection accident case and stands for the proposition that the favored driver must be as observant as a reasonably prudent person under the same conditions. I have no dispute with this proposition of law, but Delvin failed to introduce any evidence whatsoever that Smith acted in a manner contrary to a reasonably prudent person.

Article 18, § 5 of the Arizona Constitution requires that the defense of contributory negligence "shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury." Our supreme court has repeatedly held that the provision only applies when there exists *credible* evidence to support a determination of contributory negligence. *Sax v. Kopelman,* 96 Ariz. 394, 396 P.2d 17 (1964); *Mitchel v. Colquette,* 93 Ariz. 211, 379 P.2d 757 (1963).

Because the record discloses no credible evidence on the issue of Smith's contributory negligence I would affirm the directed verdict of the trial court.